**STATE of Utah, Plaintiff and Respondent,**

v.

**James E. BALLENBERGER, Defendant and Appellant.**

No. 17619.

Supreme Court of Utah.

Aug. 25, 1982.

---

Peter Stirba of McKay, Burton, Thurman & Condie, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant appeals his conviction of the offense of theft[1] of property valued over $1,000, a felony of the second degree.[2]

Officer LeVitre had been advised, officially, to increase his patrol of a certain area in Murray City because of an inordinately large number of recent burglaries. While he was in that area at approximately 3:00 a.m. on May 15, 1980, LeVitre noticed an eastbound car on the Hi-Land Dairy access road make a sudden turn into the parking lot of Oakwood Village Shopping Center.

Officer LeVitre waited for the car to reappear, and when it did not, he radioed for assistance and drove behind the buildings in search of the car. He found the car with its hood raised, and defendant standing beside it. Sitting in the car was one Fulton. The officer asked defendant if there were some problem. Defendant answered that he was checking the oil. Officer LeVitre then got out of his automobile and asked for identification from defendant and Fulton. Fulton produced identification; defendant did not. The shopping center was well lighted, and Officer LeVitre observed a C.B. radio, an antenna and headphones on the back seat of the car. When asked who owned the property, defendant did not answer. At that time, Officer Hansen arrived in response to LeVitre's call for

---

1. In violation of Section 76–6–404, Utah Code Ann., 1953, as amended.

2. Section 76–6–412, Utah Code Ann., 1953, as amended.

assistance, and also observed the radio equipment in the car. LeVitre then took Fulton to his patrol car for questioning, while Hansen took defendant into his car. Hansen gave defendant the Miranda [3] warning, then asked him where he got the C.B. equipment. Defendant told Hansen that he and Fulton had just purchased the equipment from a friend. Hansen asked defendant what he paid for the equipment. Defendant then told the officer that he would prefer not to answer any questions. Hansen ceased the interrogation and reported to LeVitre the statements made by defendant. LeVitre, who had obtained a different story from Fulton, confronted Fulton with the difference in the stories. Fulton then admitted to LeVitre that he and defendant had taken the equipment from a van nearby.[4] At this time, the officers had probable cause to arrest defendant, though he was not formally arrested until later. LeVitre and Fulton departed, while defendant and Hansen waited in Hansen's patrol car.

After fifteen minutes, LeVitre returned with Fulton and one Ashby, who owned the van from which the equipment was taken, and who identified the equipment as belonging to him. Ashby did not know Fulton or defendant and had not given them permission to take his property. Defendant and Fulton were thereupon formally placed under arrest.

■ On these facts, defendant argues that he was illegally arrested. He contends that the arrest was made, not at the time of the formal arrest, but at the time the officers detained him by placing him in the patrol car and giving him the *Miranda* warning. At that time, defendant argues, the officers did not have an articulable sus-

picion to justify further investigation,[5] nor did they have probable cause to believe that a crime had been committed. Defendant relies on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Considering the lateness of the hour, the suspicious movements of the defendant and his companion, and the fact that the officers had been advised of the high rate of burglaries in the area, together with the unobstructed view of the C.B. equipment, we believe the officers were justified in making further investigation. The fact that the defendant and his companion were separated for the questioning does not change our opinion. While there was conflicting evidence of physical restraint [6] on the part of the officers, defendant made no request that he be allowed to leave. The evidence is sufficient to sustain the court's determination that defendant was not unduly restrained when he was asked to sit in the police car for questioning. The brief questioning by Officer Hansen prior to the time defendant exercised his Fifth Amendment rights was within the ambit permitted by *Terry.* As previously noted, at the time Fulton admitted the theft, and implicated defendant, the officers had probable cause for an arrest. We conclude that the arrest here was lawful, and not in violation of defendant's constitutional rights.

■ After his arrest, defendant's car was impounded, and the officers removed the C.B. equipment, antenna, stereo headphones, speakers and a toolbox, without first obtaining a warrant for the seizure.

Defendant contends that this seizure was unlawful, since after impoundment of the car and arrest of the occupants no exigent

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. LeVitre's testimony concerning Fulton's admission was allowed for the purpose of the hearing on defendant's motion to suppress, but was excluded before the jury, since Fulton was not available to testify.

5. Defendant relies on *In re Tony C.,* 21 Cal.3d 388, 148 Cal.Rptr. 366, 582 P.2d 957 (1978).

6. At the hearing on defendant's motion to suppress the evidence, defendant testified that he was handcuffed and placed under arrest before he was placed in the patrol car. The District Court Judge, faced with conflicting testimony from defendant and the two officers, chose to believe the latter, as he found their testimony more credible. The judge is the factfinder at such a hearing, and as such, is the sole arbiter of the credibility of witnesses.

circumstances existed which would preclude the officers from obtaining a search warrant. However, in *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the United States Supreme Court reminds us: "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' *United States v. Rabinowitz,* 339 U.S. 56, 66 [70 S.Ct. 430, 435, 94 L.Ed. 653]."

In ruling on defendant's motion to suppress this evidence, the trial court observed that there was here no actual search of the automobile since the articles seized were in plain view when the officers first questioned defendant. The officers merely seized contraband after it had been identified as such by the owner, Ashby. Seizure of evidence at the time of a lawful arrest, upon a reasonable belief that such contraband is connected with the crime is justified without a warrant; *State v. Torres,* 29 Utah 2d 269, 508 P.2d 534 (1973); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and where officers have probabe cause to search an automobile and seize evidence of a crime, they have the permissible alternative to seize the vehicle, take it to the police station and search it there, *State v. Shields,* 28 Utah 2d 405, 503 P.2d 848 (1972); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).[7] We conclude that the seizure of the items in the back of plaintiff's truck was not unreasonable, and that the evidence was properly admitted at the trial court.

By the time of the trial, all of the equipment taken from defendant's truck had been returned to the victim, Ashby, who sold the items. The State produced color photographs depicting the C.B. radio, the earphones, the speakers and the toolbox. The items in the photo were identified by LeVitre, Hansen and Ashby as being the property found in defendant's car. Ashby also testified that there were tools in the toolbox, but none were depicted in the color photographs. As the owner of the property, Ashby was allowed to give his opinion as to the value of the property stolen.[8] He testified that he had purchased the tools five months prior to the theft for $1,800, and estimated their value at the time of the theft at $1,300. The remainder of the property had a total value of around $245. Defendant made no objection to the introduction of Ashby's testimony as to the value of the property, nor to his testimony that tools were in the toolbox when it was taken. Defendant did object, however, to the admission of the photographs in evidence on the ground of lack of foundation and on the ground that the tangible property was the best evidence and would have to be produced. These objections were overruled. After the State rested its case, defendant moved to dismiss the charges for failure to prove a prima facie case, because of the lack of the actual property in evidence. When that motion was denied, defendant produced an expert witness to rebut Ashby's testimony of the value of the equipment. The expert gave his opinion with respect to the value of some, but not all, of the stolen property. The property on which the expert had an opinion had a value of $650, including some of the tools, which were identified by brand name.

Section 76–6–412, Utah Code Ann., 1953, as amended, provides:

> dence at the scene of the initial search, the fact that for reasons of convenience they actually did so at a different time and place does not of itself render the entire continuing search process unreasonable." [Citations omitted.]
>
> 64 Cal.Rptr. at 317, 434 P.2d at 613.

---

7. See also *People v. Harris,* 67 Cal.2d 866, 64 Cal.Rptr. 313, 434 P.2d 609 (1967), a case, like the instant one, in which articles "plainly in view" at the time the car was found were not seized until the vehicle was impounded. The Court said:

> The seizure does not become unreasonable merely because the police failed to remove the articles at the first opportunity. As we have recently said, "Since the officers could lawfully have taken possession of the evi-

8. *State v. Harris,* 30 Utah 2d 439, 519 P.2d 247 (1974).

(1) Theft of property and services as provided in this chapter shall be punishable as follows:

(a) As a felony of the second degree if:

(i) The value of the property or services exceeds $1,000;

\*   \*   \*   \*   \*   \*

(b) As a felony of the third degree if:

(i) The value of the property or services is more than $250 but not more than $1,000;

\*   \*   \*   \*   \*   \*

(c) As a class A misdemeanor if the value of the property stolen was more than $100 but does not exceed $250.

Thus the value of the property is material to the degree of the crime for which defendant can be convicted. Because of the dispute of the value of the property, the court instructed the jury on both second degree and third degree felony, as described in the statute. Defendant made no objection to this instruction; the jury found him guilty of the highest crime charged, second degree felony theft.

Defendant argues that he was denied due process in the failure of the State to produce the actual property in court for examination by his expert witness, and by the jury. He contends that he was unable to cross-examine Ashby, or to rebut Ashby's testimony as to value, particularly because the most valuable items, the tools, are not even shown in the photographs. Defendant cites *State v. Harris*, 30 Utah 2d 439, 519 P.2d 247 (1974), to support his point. There this Court stated:

> Value is something at which the jury may take a look. The owner of an article is competent to testify as to its value, and such testimony is admissible, but neither inviolate nor impervious to disbelief. The jury may take a view of the item for excellence or shodiness, [sic] and look through the same spectacles at the witness to determine the latter's imagination or credibility,—and the verdict is its as to value.

Defendant contends that it is impossible for the jury to weigh Ashby's testimony under the principles of *Harris,* where there is no property available so that the jury may "take a view."

While the better policy, of course, would be to preserve the property for the view of the jury, production of the physical evidence at trial is not always necessary where the elements of the crime are otherwise proved. If it were not so, the thief who sells or destroys the stolen property could not be convicted of his crime. Other jurisdictions are in accord.[9]

We find no error on the part of the district court in the omission of evidence, or in its ruling on defendant's motions to suppress the evidence or dismiss the charges. Ashby was a competent witness, and as owner of the property, was competent to testify as to its value. Further, Ashby was in court, available for cross-examination and was cross-examined extensively. We therefore find that defendant was afforded his constitutional right of confrontation and was not denied due process.

Affirmed.

DURHAM, J., does not participate herein.

9. See, for example, *State v. Bouillon,* 112 Ariz. 238, 540 P.2d 1219 (1975); *State v. Landlee,* 85 N.M. 726, 516 P.2d 697 (1973); *Rodriguez v. People,* 168 Colo. 190, 450 P.2d 645 (1969).