The STATE of Utah, Plaintiff
and Respondent,

v.

Lester Ralph ROMERO, Defendant
and Appellant.

No. 16963.

Supreme Court of Utah.

Feb. 17, 1983.

Bradley P. Rich, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

A jury convicted defendant of two counts of forgery and two counts of recording a false or forged instrument. U.C.A., 1953, §§ 76-6-501, 76-8-414. On appeal, he claims error in the district court's denial of his motion to suppress documentary evidence because: (1) the search and seizures were unreasonable; (2) probable cause was lacking; (3) an affidavit was not returned in a timely manner; (4) the magistrate was not "neutral and detached"; (5) police examined some of the documents before the warrant was issued; and (6) the affiant's deposition was not in writing and subscribed.

On October 8, 1978, Officer Collins procured a search warrant from Judge Eleanor Lewis (the "Lewis warrant") authorizing a search of defendant's residence for various business papers and related objects. The officer's affidavit described his extensive examination of several business organizations in which defendant was the principal through assumed names. The affidavit also contained a confidential informant's statement that the listed items of evidence were at defendant's residence. The police officers commenced their search under the warrant at about 8:30 a.m. the next day. They concentrated their efforts in one bedroom, where most of the listed items were located. A cursory examination was also made of other areas authorized in the warrant: all other rooms, the garage, the yard, and vehicles at the home.

While locating the listed items, the police also uncovered evidence pertaining to other criminal cases pending against defendant. By 10:00 a.m., they decided to seek another warrant to authorize the seizure of this evidence. They phoned Judge Raymond Uno, and he and a certified shorthand reporter arrived at defendant's home at about 3:00 p.m. The search under the Lewis warrant ended shortly thereafter.

After being placed under oath, Officer Collins gave a deposition before Judge Uno in which he reviewed each item of additional evidence and explained its relationship to other offenses. This deposition was recorded in shorthand and transcribed within seven days. Officer Collins also signed and submitted an affidavit in support of the motion for a search warrant. Judge Uno thereupon issued a warrant (the "Uno warrant"), and the evidence pertaining to both warrants was removed from the premises. The warrants, returns, and other papers were filed on October 11, 1978, but for some unexplained reason Officer Collins retained the affidavit for the Lewis warrant and did not file it until January 15, 1979.

Defendant's motion to suppress the evidence seized at his home was heard and denied in February, 1979. A four-count information was filed against defendant the following June. During the ensuing trial, items seized under both warrants were introduced into evidence over defendant's objection. A jury found defendant guilty of all four counts, and he was sentenced to concurrent terms of either one to five years or one to fifteen years on all counts.

■■■ 1. Defendant contends that the search and accompanying seizures were unreasonable because the police seized items not listed in the Lewis warrant and searched in places where the listed items were unlikely to be found and after most of them had already been located. He argues that these violations transformed the entire search into a constitutionally invalid general search, and that this requires the suppression of all evidence, whether seized legally or not. This argument is unpersuasive. The exclusionary rule does not require the suppression of otherwise legally seized evidence merely because it was obtained in the same search as evidence illegally seized. *United States v. Forsythe*, 560 F.2d 1127, 1134 (3d Cir.1977); *United States v. Daniels*, 549 F.2d 665, 668 (9th Cir.1977). *See also Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976). Only the evidence that was illegally seized should be suppressed.

Defendant also argues that the police illegally seized items not listed in the warrant. The Lewis warrant listed ten categories of evidence for seizure.[1] The return recorded a seizure of at least 510 items of evidence. Our review of the record shows that while many of these items were covered by the Lewis warrant, some were not.[2]

■■■ Warrantless seizures are unreasonable per se unless the exigencies of the

---

1. These included some specific items, such as a notary seal and certain warranty deeds, and some groups of items, such as all recordable documents notarized by Robert Dolan and all checks drawn on certain bank accounts.

2. The items not covered include a Utah Department of Social Services identification card and eight checks drawn on First Security Bank.

situation justify an exception. *State v. Lee,* Utah, 633 P.2d 48, 50, *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). One such exception arises when police, while searching pursuant to a warrant, discover evidence in "plain view" that is not listed in the warrant. In this situation, a warrantless *seizure* is justified if: (1) the officer is lawfully present where the search and seizure occur; (2) the evidence is in plain view; and (3) the evidence is clearly incriminating.[3] *Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982); *Coolidge v. New Hampshire,* 403 U.S. 443, 464–68, 91 S.Ct. 2022, 2037–2039, 29 L.Ed.2d 564 (plurality opinion), 505–22 (concurring and dissenting opinions) (1971); *State v. Ballenberger,* Utah, 652 P.2d 927, 930 (1982); *State v. Austin,* Utah, 584 P.2d 853, 856 (1978). It should be noted that these are not necessarily the same requirements that determine whether an officer observing items in "open view" has committed an illegal *search. State v. Lee,* 633 P.2d at 50–51; *State v. Echevarrieta,* Utah, 621 P.2d 709, 710–11 (1980).

In this case, the first condition of the exception is satisfied with respect to the seized evidence not listed in the warrant because the police were at defendant's residence pursuant to a valid search warrant and limited their search to the geographical areas delineated therein. The second condition was satisfied since each item of evidence came in plain view while the officers were executing the search prescribed in the warrant. The third condition was satisfied in that nearly every item not specifically listed in the Lewis warrant had either an assumed name of defendant upon it or the name of one of the business organizations through which defendant acted under an assumed name in transactions involving fal-

sified documents.[4] As to the few remaining items that were seized, reversal is not required since the record contains no indication that they were introduced into evidence. *See Lowery v. United States,* 258 F.2d 194, 196 (9th Cir.1958); *Stephens v. State,* 119 Ga.App. 674, 168 S.E.2d 333 (1969).

Defendant argues that the search was unreasonable because the police searched the bedroom, garage, vehicles, and grounds, places where the business papers listed in the Lewis warrant were unlikely to be found. By taking this position, defendant would have us limit police searches to areas where most people would place the listed items of evidence. We reject this position because legal searches must not be vulnerable to being thwarted simply by the expedient of concealment in unusual locations. Rather, the limitation on the scope of a search pursuant to a warrant is drawn in terms of those areas where it is reasonable to believe that the listed evidence *could* be located. *United States v. Chadwell,* 427 F.Supp. 692, 696 (D.Del.1977). That limitation was not exceeded in this search.

Finally, defendant argues that the search was unreasonable because the police examined several rooms, the garage, the grounds, and several vehicles after most of the listed items had already been found in a bedroom. Among the few items not found in the bedroom, however, was a notary seal in the name of Robert Dolan. This was expressly listed in the Lewis warrant, and its presence in defendant's home would have significant evidentiary value. Consequently, when it could not be found with the other listed items, the police expanded their search into the above areas until the seal and several documents bearing its imprint were finally located in a closet. Such a search was reasonable.

---

**3.** A fourth requirement discussed in the opinions in *Coolidge v. New Hampshire,* that "the discovery of evidence in plain view must be inadvertent," 403 U.S. at 469, 91 S.Ct. at 2040, is omitted here since it was specified by only a plurality of the justices in that case, *see North v. Superior Court,* 8 Cal.3d 301, 307–08, 502 P.2d 1305, 1308–09, 104 Cal.Rptr. 833, 836–37 (1972), and since inadvertence was omitted as

a separate requirement in the more recent decision in *Washington v. Chrisman,* 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982).

**4.** The only items not shown in the record as having one of these characteristics are a quitclaim deed, several torn-up checks, and a packet of envelopes and assorted papers found in the trash.

2. Defendant argues that probable cause was lacking for the Lewis warrant because it was supported by inadequate statements of an informant regarding the location of the evidence. He relies on *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In *Aguilar,* a search warrant was issued based upon an affidavit of police officers who swore only that they had "received reliable information from a credible person and . . . believe[d]" that narcotics were being illegally stored on the described premises. 378 U.S. at 109, 84 S.Ct. at 1511. Similarly, in *Spinelli,* the affidavit merely recited with respect to the informant "that the FBI 'has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information . . .' " by means of certain telephones. 393 U.S. at 414, 89 S.Ct. at 588. The Supreme Court held both of these affidavits inadequate because they failed to set forth (1) "any of the 'underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusion" and (2) "the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.' " *Id.* at 413–19, 89 S.Ct. at 587–590–591; *Aguilar v. Texas,* 378 U.S. at 114–16, 84 S.Ct. at 1514–1515.

The affidavit supporting the Lewis warrant differed substantially from those in *Aguilar* and *Spinelli.* Besides containing the informant's statement that "he believed Mr. Romero kept all of his business papers at his (Romero's) home," it stated that the informant had been employed by the defendant and had carried on several business dealings with him. It also stated that the informant was in defendant's home several times during 1977 and 1978. On one such occasion, he asked defendant about the

amount owed on a debt. According to the affidavit, the defendant then "left the kitchen going back toward the bedroom, came back in a few minutes with a large metal box containing papers, [defendant] looked through the box, checked a paper, and told the informant the amount of the debt." Furthermore, the affidavit recited that the affiant "was present at a deposition wherein the informant reiterated under oath what he told your Affiant."

■ A reviewing court should pay great deference to a magistrate's determination of probable cause. *Spinelli v. United States,* 393 U.S. at 419, 89 S.Ct. at 590–591. Accordingly, we have no difficulty in concluding that Judge Lewis's determination was consistent with the *Aguilar-Spinelli* standards. The affidavit set forth sufficient personal observations of the informant to enable a prudent magistrate to conclude independently that the evidence sought was probably at defendant's residence. *See State v. Treadway,* 28 Utah 2d 160, 499 P.2d 846 (1972).

■ There was also adequate support for the affiant's implicit conclusion that the informant was credible or his information reliable.[5] The affiant averred to having heard the informant give the same information under oath at a deposition, which could warrant a prosecution and conviction of the informant for perjury. *Cf. United States v. Harris,* 403 U.S. 573, 583–84, 91 S.Ct. 2075, 2081–2082, 29 L.Ed.2d 723 (1971). Furthermore, the reliability of the hearsay statement was boosted by the detail with which the informant described his personal observations at defendant's home, *see id.* at 580–83, 91 S.Ct. at 2080–2081; *United States v. Copeland,* 538 F.2d 639, 642–43 (5th Cir. 1976); *State v. Chapman,* 24 N.C.App. 462, 466–67, 211 S.E.2d 489, 492–93 (1975), and by the common-sense observation that papers of the type sought are often kept at home. *State v. Purcell,* Utah, 586 P.2d 441, 443 (1978); *United States v. Ventresca,* 380 U.S. 102, 108–09, 85 S.Ct. 741, 745–746, 13

---

5. The affidavit did not expressly aver that the informant was credible or his information reliable, but such an averment is not required.

*United States v. Weinrich,* 586 F.2d 481, 490 (5th Cir.1978).

L.Ed.2d 684 (1965); *Anthony v. United States,* 667 F.2d 870, 874–75 (10th Cir.1981).

■■■ 3. Defendant also seeks to invalidate the Lewis warrant on the ground that Officer Collins failed to return the supporting affidavit to Judge Lewis "forthwith," pursuant to U.C.A., 1953, § 77–54–14 (subsequently superceded by § 77–23–9). This claim is without merit as a basis for invalidating the warrant because the statute imposes no such requirement with respect to the affidavit and no such penalty with respect to the warrant. Other objections to the Lewis warrant have also been considered and found to be without merit.

4. Defendant next contends that the Uno warrant was invalid because Judge Uno was so involved with the search that he was not a "neutral and detached" magistrate, as required in *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).

In *Lo-Ji Sales,* the magistrate executed an open-ended search warrant, enlisted nine police officers, and then converged with them on a pornographic bookstore. During the search, he directed the officers' activities and made an initial detailed examination of the pornographic materials himself. After six hours of this activity, evidence was seized and its description subsequently entered on the search warrant. By taking these actions, the judge became "a member, if not the leader, of the search party," and thereby lost his status as a "neutral and detached" judicial officer. *Id.* at 326–28, 99 S.Ct. at 2324–2325.

■■■ In contrast, the involvement of Judge Uno in this case was more like that of the judge in *Heller v. New York,* 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), which the Court in *Lo-Ji Sales* took care to distinguish. *Lo-Ji Sales, Inc.,* 442 U.S. at 327–28, 99 S.Ct. at 2324–2325. In *Heller,* a judge left his office upon police request to view a reportedly obscene film at a theatre. After viewing the entire performance and while still at the theatre, he issued a warrant for the film's seizure, which was executed immediately by police officers. In common with the Supreme Court's conclusion in *Heller,* we conclude that Judge Uno did not lose his character as a "neutral and detached" magistrate merely because he went to defendant's home, viewed the evidence, and issued a search warrant, which was immediately executed. *Accord, Johnson v. State,* Alaska, 617 P.2d 1117, 1125–26 (1980); *Arnsdorff v. State,* 152 Ga.App. 515, 516–17, 263 S.E.2d 176, 178 (1979).

■■■ 5. Defendant also argues that the Uno warrant seizures were illegal because the police examined the evidence before this warrant was issued. We disagree. The search that uncovered this evidence was authorized by the Lewis warrant. The Uno warrant is only relied upon to authorize its seizure.

■■■ 6. Finally, defendant argues that the Uno warrant was invalid because the judge did not "take [the witnesses'] depositions in writing, and cause them to be subscribed" before issuing the warrant, as required by U.C.A., 1953, § 77–54–4 (repealed effective July 1, 1980 (after this trial), and replaced by § 77–23–4). He relies on *State v. Jasso,* 21 Utah 2d 24, 439 P.2d 844 (1968), in which this Court reversed a conviction where evidence had been obtained by a search warrant based on a police officer's oral deposition before the magistrate, which was not recorded or transcribed. After the motion to suppress, the State filed a written affidavit which purported to set forth the facts the officer had related orally, but the Court gave no effect to that affidavit, declaring that a warrant cannot issue on an oral deposition. Two justices dissented, finding substantial compliance with the statutory requirement.

Though perhaps covered by the language in *Jasso,* this case is distinguishable in the important fact that here the officer's testimony before the magistrate was taken in shorthand, transcribed within a week, and thereby available for whatever use the defense might wish to make of it. Our new Code of Criminal Procedure contains a provision expressly authorizing the issuance of warrants based on testimony that is recorded verbatim, even though not transcribed

when the warrant is issued. § 77–23–4(1). Both the earlier Code and the current provision contain an express direction that a formal departure from the prescribed procedure shall not render a pleading or proceeding invalid unless it shall have actually prejudiced the defendant in respect to a substantial right. U.C.A., 1953, § 77–53–2 (repealed 1980); U.C.A., 1953, § 77–23–12 (enacted 1982).[6] We therefore decline to apply the 3–2 *Jasso* decision to the facts of this case, and reject the argument that the Uno warrant was invalid because it was not based on a signed writing.

The judgment of conviction is affirmed.

HALL, C.J., STEWART and HOWE, JJ., and CALVIN GOULD, District Judge, concur.

DURHAM, J., having disqualified herself, does not participate herein; GOULD, District Judge, sat.

---

**6.** In addition, the record shows that apart from the contested oral deposition of the officer the Uno warrant was also based on a written affidavit the officer signed before the magistrate. That affidavit is not in the record. Since we assume regularity in the absence of record evidence to the contrary, *State v. Jones*, (1982), Utah, 657 P.2d 1263 p. 1267, we are entitled to assume that the affidavit provided an independently sufficient basis for the warrant.