**STATE of Utah, Plaintiff and Respondent,**

v.

**Carl L. and Lana G. ANDERTON, Defendants and Appellants.**

**No. 18506.**

Supreme Court of Utah.

Aug. 15, 1983.

**14.** *M. & T. Chemicals, Inc. v. International Business Machines Corp.,* 403 F.Supp. 1145 (S.D.N.Y.1975), *aff'd,* 542 F.2d 1165 (2nd Cir. 1976).

Robert M. McRae, Vernal, for defendants and appellants.

David L. Wilkinson, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendants were convicted of the offenses of possession of marijuana with intent to distribute for value and production of marijuana.[1] On appeal, they challenge the propriety of the search of their residence, and defendant Lana G. Anderton challenges the sufficiency of the evidence to support her conviction.

The case was tried to the court, sitting without a jury, on partially stipulated facts

abstracted as follows: Defendants owned and resided in the residence searched by officers of the Roosevelt Police Department pursuant to a search warrant. The search produced the following:

a. Three (3) planters with four (4) green plants growing in them.

b. One (1) brown paper bag containing two (2) plastic bags each, [sic] of which contained green plant material. One (1) plastic bag containing 7.8 ounces of material and one (1) containing 4.1 ounces of material [sic].

c. One (1) brown paper bag which contained a large plastic bag which in turn contained eight (8) smaller plastic bags of green plant material. Each of the smaller bags contained approximately one (1) ounce of material. The large plastic bag also contained one (1), [sic] foil-wrapped, [sic] chunk of "hash" which weighted [sic] 10.2 grams.

d. One (1) plastic bag of green plant material.

e. One (1) film canister of green plant material.

f. Two (2) packages of cigarette rolling papers.

It was further stipulated that the plants and the green plant material were in fact marijuana, and in reference to the bags of marijuana defendant Carl L. Anderton stated, "My wife doesn't know anything about this. I just came home with everything."

The evidence at trial was that the subject search warrant was issued by a justice of the peace, John B. Gale, upon the affidavit of Officer Jeff Stagg of the Roosevelt Police Department that a confidential informant had related to him that he had "personally observed the substance in question." It was also recited in the affidavit that Officer Stagg had conferred extensively with the informant who had previously cooperated with him, "providing truthful, cogent information, resultant in bodily injury to C.I." Portions of the preprinted form affidavit allowing for insertion of the date of the informant's observation and the date

1. In violation of U.C.A., 1953, § 58–37–8.

the information was given to the affiant were left blank.

The affidavit further recited that the marijuana was located at defendants' residence, which was identified by street address, and in a pickup truck identified by make, model, color and license number. For the stated purpose of a nighttime search, the affiant recited that he was positive of the location of the marijuana because "I have conferred extensively with an informant of a confidential nature, who has related to me the information contained herein."

The search warrant was issued at 9:42 p.m. on May 3, 1981, and the search was conducted that same night. The search warrant, the supporting affidavit and the officer's return of the property seized was retained by Judge Gale until August 27, 1981, when they were turned over to Officer Wayne Embleton for use at the preliminary hearing conducted by the circuit court. Thereafter, Officer Embleton kept the documents in his possession until the trial, at which time he testified that they had not been altered.

Defendants first contend that the evidence should have been suppressed because the affidavit in support of the warrant failed to state probable cause for the search in that it did not meet the two-pronged test advanced in *Aguilar v. Texas*,[2] followed in *Spinelli v. United States*,[3] which requires 1) that "underlying circumstances" be set forth sufficient for the magistrate to independently judge the validity of the informant's conclusion, and 2) that the affiant support his claim that the informant was "credible" and his information was "reliable."

■ Defendants urge that the affidavit does not meet the *Aguilar* test because it

does not set forth the time and place, nor by whom the marijuana was possessed. Furthermore, since authority was sought to search a vehicle in addition to the residence, the location of the marijuana was unknown to affiant.

As was observed in *Spinelli* regarding the notion of probable cause:

[P]robability, and not a prima facie showing, of criminal activity is the standard of probable cause[4] ... [I]n judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense,[5] and that their determination of probable cause should be paid great deference by reviewing courts.[6]

393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637.

Applying the foregoing standards in the instant case, the affidavit contains adequate facts to support the magistrate's finding of probable cause to issue the warrant. Read as a whole, and in a commonsense way,[7] the affidavit sets forth sufficient underlying circumstances to support the conclusions reached by the affiant and to support the reliability and credibility of the informant.

Unlike *Aguilar*, the affidavit in this case recites that the informant personally observed the marijuana. Also, the affiant's conclusion that a search of the residence and vehicle would produce the contraband was supported by the further recitals that the informant "has related to me the information contained herein," verified by the affiant's own investigation that "the individual named herein sells contraband in quantity."

It is also to be observed that during the pendency of this appeal, in the case of *Illi-*

---

**2.** 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**3.** 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

**4.** Citing *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

**5.** Citing *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

**6.** Citing *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *see also State v. Romero,* Utah, 660 P.2d 715 (1983).

**7.** *United States v. Ventresca, supra* n. 5.

nois v. Gates,[8] the United States Supreme Court abandoned the rigid "two-pronged test" advanced in *Aguilar* and *Spinelli* in favor of reaffirming the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations. In so doing, the Court had this to say:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. *Jones v. United States,* supra, 362 U.S., at 271 [80 S.Ct. at 736]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.*

—— U.S. —— at ——–——, 103 S.Ct. 2317, at 2332, 76 L.Ed.2d 527.

The "totality of the circumstances test" as reaffirmed in *Gates* lends even further support for the conclusion reached by the magistrate in the instant case that probable cause existed for the issuance of the search warrant.

Defendants also rely upon *Rosencranz v. United States,*[9] which interpreted *United States v. Ventresca*[10] as requiring the affidavit to specifically set forth the time of the informant's observations. We do not so interpret *Ventresca.*

The standard established in *Ventresca* is that of commonsense, which was stated therein as follows:

> [A]ffidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.

380 U.S. at 108, 85 S.Ct. at 745.

> [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded warrants.[11]

The affidavit in the instant case, couched as it is in present-tense language which describes on-going criminal activity, clearly refutes any contention that it was based upon stale information.[12] Further applying the commonsense rule espoused in *Ventresca,* the affidavit on its face presented a substantial basis for the magistrate to conclude: 1) that the information received by the affiant was recent and contemporaneous; 2) that contraband was probably possessed by defendant Carl Anderton; and 3) that realistically the search should include not only the residence, but the vehicle as well.

■ Defendants next contend that the blank portions of the affidavit rendered it void in light of U.C.A., 1953, § 78–5–24, which provides:

> Every paper made or issued by a justice, except a subpoena, must be issued without a blank to be filled in by another; otherwise it is void.

There is some considerable question whether the foregoing statute applies to the affidavit in question since it would appear that it is not "a paper made or issued by a justice" containing blanks "to be filled in by another." However, we do not address that issue, for in the absence of any contention

---

**8.** —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

**9.** 356 F.2d 310 (1st Cir.1966).

**10.** *Supra* n. 5.

**11.** Citing *Jones v. United States,* 362 U.S. at 270, 80 S.Ct. at 735. In accord: *State v. Romero, supra* n. 6.

**12.** In accord: *State v. Clay,* 7 Wash.App. 631, 501 P.2d 603 (1972); *Guzewicz v. Slayton,* 366 F.Supp. 1402 (E.D.Va.1973); *Covington v. State,* 129 Ga.App. 150, 199 S.E.2d 348 (1973); *State v. Boudreaux,* La., 304 So.2d 343 (1974).

on the part of defendants that the blanks complained of in any way infringed upon their substantial rights, the Court is obliged to disregard the "defect" in the affidavit by reason of the content of Rule 30, Utah Rules of Criminal Procedure, which provides as follows:

> (a) Any error, defect, irregularity or variance which does not affect the substantial rights of a party *shall be disregarded.* [Emphasis added.]

██ Defendants also contend that the magistrate's failure to return the search warrant and the related documents to the appropriate court within fifteen days after the return on execution of the warrant in compliance with U.C.A., 1953, § 77–23–9 rendered the documents void. Again, however, defendants have made no showing that the magistrate's failure to comply with the statute had any adverse effect upon their substantial rights, nor have they shown that such failure in any way compromised the integrity of the documents. We therefore conclude that the violation of the statute constituted nothing more than the failure to perform a ministerial act which did not affect the validity of the search warrant and the search conducted thereunder.[13]

The remaining contention on appeal is that of defendant Lana Anderton that the evidence was insufficient to convict her of the crimes charged. The State's rejoinder is that not only was the evidence at trial sufficient to convict, but there was an absence of substantial or believable evidence necessary to generate reasonable doubt of guilt.

██ The accepted standard of appellate review permits this Court to overturn a conviction only when it is made to appear that reasonable minds must necessarily entertain a reasonable doubt of guilt,[14] and we should only interfere when the evidence is so lacking and insubstantial that reasonable men could not possibly have determined guilt beyond a reasonable doubt.[15]

Viewing the evidence in the light most favorable to the judgment of the trial court as we are obliged to do,[16] this writer concludes that it adequately supports the conviction of both defendants. The quantity of marijuana and hashish, which included live marijuana plants, was too large for personal consumption, and it was found in the defendants' home, which they owned and resided in as husband and wife.

It was reasonable for the trial court to infer from the attendant facts and circumstances that the contraband, particularly the potted plants of marijuana, was in plain view. It was also reasonable to infer from the stipulation of the parties that both defendants were present during the search, at which time defendant Carl L. Anderton volunteered that "my wife doesn't know anything about this. I just came home with everything." Furthermore, in their brief on appeal, defendants concede that they were both present during the search.[17]

The fact that defendant Lana Anderton was not named in the search warrant is of no moment, because the resultant search and the stipulation of facts placed her in constructive, if not actual, possession of a large quantity of contraband which was obviously intended for distribution.

---

13. *State v. Romero, supra* n. 6; *see also Wright v. State,* Okl.Cr., 552 P.2d 1157 (1976); *People v. Wilson,* 173 Colo. 536, 482 P.2d 355 (1971); *United States v. Wilson,* 451 F.2d 209 (5th Cir.1971).

14. *State v. Fort,* Utah, 572 P.2d 1387 (1977).

15. *State v. Lamm,* Utah, 606 P.2d 229 (1980).

16. *State v. Kerekes,* Utah, 622 P.2d 1161 (1980).

17. Nevertheless, a majority of the Court concludes to the contrary and opines that the evidence of constructive possession was insufficient to support the conviction of defendant Lana G. Anderton. However, viewing the evidence in the light most favorable to the judgment of the trial court, it supports the conclusion that the contraband was found in the presence of both defendants, in open view and readily accessible to each, all of which meets the standards of constructive possession laid down in the case of *United States v. Davis,* 562 F.2d 681 (D.C.Cir.1977), and others relied upon by the majority.

The only exculpatory evidence presented to the trial court was defendant Carl Anderton's assertion that "my wife doesn't know anything about this. I just came home with everything." The trial court apparently discounted the statement as being only an act of chivalry made in an effort to exonerate his wife.

It lies within the prerogative of the trial court to weigh the evidence and determine the credibility of the witnesses, and this Court should not substitute its judgment for that of the trial court on issues of fact that are supported by substantial, credible and admissible evidence.[18] Nevertheless, a majority of the Court has concluded that the evidence was insufficient to sustain the conviction of the defendant Lana G. Anderton, and her conviction is therefore reversed.

The conviction and judgment of the trial court as to the defendant Carl L. Anderton are affirmed in all respects.

OAKS, J., concurs.

DURHAM, Justice (concurring separately in result):

I concur with the opinion of the Chief Justice in affirming Carl Anderton's conviction of the crimes of production of marijuana and possession of marijuana with intent to distribute for value. See, U.C.A., 1953, §§ 58–37–8(a)(i) & (ii) (Supp.1981). However, I believe that there is insufficient evidence to convict his wife Lana Anderton. The standard of review, as cited by the Chief Justice's opinion, authorizes this Court to overturn a conviction when the evidence is so lacking or inconclusive that reasonable minds must entertain a doubt of guilt. The evidence in this case is so inadequate as to compel such reasonable doubt of guilt in the case of Mrs. Anderton.

The issue here is whether the facts in the record are sufficient to establish Mrs. Anderton's guilt for offenses which require both knowledge and intent. See, U.C.A., 1953, § 58–37–8(a) (Supp.1981). Of the two elements of possession with intent to distribute, possession must first be shown. While this Court has stated that "[u]nlawful possession does not necessarily mean that the substance be found on the person of the accused or that he have sole and exclusive possession thereof," to prove constructive possession, the evidence must show that the drugs were "subject to [the accused's] dominion and control." State v. Carlson, Utah, 635 P.2d 72, 74 (1981) (footnotes omitted).[1] Lana Anderton's conviction on this charge was based solely on her joint ownership of and residence in the home where the drugs were found. There is substantial support for the rule that where a defendant is in nonexclusive possession or occupancy of the premises on which controlled substances are found, there must be some additional incriminating evidence to establish guilt of possession:

> [P]roof of a proprietary interest in or regular occupancy of the premises *alone* is not sufficient to prove constructive possession.

*United States v. Davis*, 562 F.2d 681, 693 (D.C.Cir.1977). (emphasis in original). The Supreme Court of Virginia has stated that:

> There is no presumption of knowing or intentional possession of the marijuana from [defendant's] occupancy of the residence. Her occupancy of the premises as a cotenant, however, is a factor to be considered with other evidence in determining whether she had constructive possession.

*Eckhart v. Commonwealth*, 222 Va. 447, 281 S.E.2d 853, 855 (1981) (citations omitted). *See also United States v. Lawson*, 682 F.2d 1012, 1016–18 (D.C.Cir.1982), *Evans v. United States*, 257 F.2d 121 (9th Cir.1958). One

---

18. *State v. Lamm, supra* n. 15.

1. This case involved a husband and wife who, following a warrant search of their home, were charged with possession of a controlled substance with intent to distribute. Police officers searched the bedroom and found guns, drugs and paraphernalia, including sealing agent, plastic bags, measuring spoons, a funnel, a strainer and scales. The charges against the wife were dismissed.

summary of the general rule reads as follows:

> [W]here the defendant is in nonexclusive possession of premises on which illicit drugs are found, it cannot be inferred that he knew of the presence of such drugs and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference.

Annot., 56 A.L.R.3d 948, 957 (1974 & Supp. 1982).

In light of the requirement of other incriminating circumstances in addition to mere occupancy, the facts of each case are critical and must be presented in detail. Some of the key factual determinations which have supported findings of constructive possession in other cases are: 1) the defendant's presence at the time the drugs were found, with emphasis on the fact that the drugs were in plain or open view, *see United States v. Lawson, supra; United States v. Davis, supra; Ford v. State,* 37 Md.App. 373, 377 A.2d 577 (1977); *Eckhart v. Commonwealth, supra;* 2) the defendant's access to the drugs, *see United States v. Davis, supra; State v. Brown,* 80 N.J. 587, 404 A.2d 1111, 1115 (1979); 3) the proximity of defendant to the drugs, *see Ford v. State, supra,* although "[m]ere proximity to the controlled substance ... is insufficient to establish possession." *Eckhart v. Commonwealth, supra,* at 450, 281 S.E.2d at 855; *see also Wright v. Commonwealth,* 217 Va. 669, 232 S.E.2d 733 (1977) (where the defendant, although not residing in the apartment, was found sitting in a bedroom next to a friend who was injecting himself with heroin, and substantial quantities of heroin were found three feet from the defendant; the defendant was acquitted despite evidence of history of heroin use); 4) evidence indicating that the "de-

fendant was participating with others in the mutual use and enjoyment of the contraband"; *Ford v. State, supra,* at 382, 377 A.2d at 581–82 (quoting *Folk v. State,* 11 Md.App. 508, 514–18, 275 A.2d 184, 187–89 (1971)); and 5) incriminating statements, *Evans v. United States, supra.*[2]

Thus, it is clear that, in finding constructive possession of controlled substances in nonexclusive occupancy settings, courts have relied on extensive and detailed factual evidence. In contrast, the facts as stipulated in this case[3] consist of a confirmation that the defendants owned and resided in the house where the warrant search was made, a list of the items found in that search, most of which were enclosed in two brown paper bags, and the statement made by defendant Carl Anderton that his wife knew nothing about the drugs and that he had just returned home with them. The only other relevant evidence in the record consists of testimony regarding the amounts of marijuana and hashish generally kept by an individual for personal use.[4] There is no evidence as to where in the home the drugs were found or where the defendant Lana Anderton was when the officers entered the house. Moreover, there is no evidence of any incriminating conduct or statements of Lana Anderton. Thus, there is nothing which establishes that the drugs were in her view, accessible or even close to her, or that she was participating in the use of the drugs or knew of their presence in the house.

Similarly, there is no evidence in the record which shows Lana Anderton's knowing or intentional involvement in the production of marijuana. The only evidence is that of joint residence in the home where the plants were found; there is nothing to

---

**2.** Other evidentiary factors which have been recognized by courts in determining guilt of possession in nonexclusive occupancy cases include suspicious behavior, previous sale of drugs and drug use. *See* Annot., *supra.*

**3.** There was no evidence offered by the State on this issue except for a brief written stipulation of fact.

**4.** That testimony related to use amounts for an *individual.* Presumably those amounts should have been doubled to determine the amounts for the personal consumption of both defendants.

establish how long the plants had been there or where they were found.

When the facts of this case are considered, particularly in light of the cases cited above, it requires a "leap of faith" to find that Lana Anderton is guilty solely on the basis of her marital relationship with her husband and their joint occupancy of the home. In view of the lack of other evidence, the self-inculpatory statement made by Carl Anderton that he had "just brought the drugs home" compels doubt about his wife's guilt. Lana Anderton's conviction should therefore be reversed.

STEWART and HOWE, JJ., concur in the concurring opinion of DURHAM, J.