PEOPLE v VARGO

Docket No. 68905. Submitted January 9, 1984, at Lansing.—Decided December 17, 1984.

Stanley J. Vargo was convicted of welfare fraud over $500 following a jury trial in Tuscola Circuit Court, Patrick R. Joslyn, J. Defendant appealed. *Held:*

1. It was not improper for the amounts of benefit payments fraudulently received to be aggregated to reach the statutory $500 felony limit. Defendant's motion to quash the information on this ground was properly denied.

2. Defendant's right to due process was not violated by the prosecutor's issuance of a new complaint and warrant on the same charge after it was dismissed following the first preliminary examination.

3. The trial court did not err in denying defendant's motion to dismiss which was based on the ground that his right to due process was violated by the lapse of time between the date of his alleged offense and the initiation of prosecution. Defendant has failed to demonstrate that he was prejudiced by the short delay.

4. The trial court did not err in refusing to admit into evidence a form provided to defendant when he applied for CETA employment. Defendant failed to establish a proper foundation for the admission of the document under the busi-

REFERENCES FOR POINTS IN HEADNOTES

[1] 79 Am Jur 2d, Welfare Laws § 113.
   Criminal liability in connection with application for, or receipt of, public relief or welfare payments. 22 ALR4th 534.

[2] 21 Am Jur 2d, Criminal Law §§ 411, 429.

[3] 21A Am Jur 2d, Criminal Law §§ 828, 872, 873.

[4] 30 Am Jur 2d, Evidence §§ 949, 950.
   Business records: authentication and verification of bills and invoices under Rule 803(6) of the Uniform Rules of Evidence. 1 ALR4th 316.
   Verification and authentication of slips, tickets, bills, invoices, etc., made in regular course of business, under the Uniform Business Records as Evidence Act, or under similar "Model Acts". 21 ALR2d 773.

[5] 29 Am Jur 2d, Evidence §§ 251, 256.

ness record exception to the hearsay rule and the information on the form does not qualify the document for admission into evidence under the public record exception to the hearsay rule.

5. No error resulted from the trial court's questioning of a prosecution witness through which it was revealed that the witness, defendant's caseworker, testified that she called defendant and told him that his benefits had been terminated due to his CETA employment and that defendant did not respond to this information. Nothing in the exchange suggested that defendant had been accused of not reporting his employment.

Affirmed.

1. CRIMINAL LAW — SOCIAL SERVICES — WELFARE FRAUD — AGGREGATION OF PAYMENTS FRAUDULENTLY RECEIVED.

Benefit payments fraudulently received by a welfare recipient may be aggregated to reach the statutory $500 felony limit in a welfare fraud prosecution (MCL 400.60[2]; MSA 16.460[2]).

2. CRIMINAL LAW — PRELIMINARY EXAMINATION — DISMISSAL OF CHARGES — REINSTITUTION OF CHARGES — DUE PROCESS.

Reinstitution of a charge against a defendant after the charge was dismissed following a preliminary examination did not violate the defendant's due process rights where new evidence was presented at the second preliminary examination to the same judge who presided over the defendant's initial preliminary examination and the failure to introduce the evidence at the first preliminary examination was more a product of neglect than a deliberate attempt to harass the defendant.

3. CRIMINAL LAW — DUE PROCESS — SPEEDY TRIAL.

The prosecuting attorney, where there has been a delay between an alleged criminal transaction and the arrest of a defendant and where the defendant has shown some prejudice as a result of the delay, bears the burden of persuading the court that the reason for the delay is sufficient to justify whatever prejudice resulted; the burden of coming forward with evidence of prejudice is on the defendant, who is most likely to have facts regarding prejudice at his disposal; the burden of persuasion rests with the state, which is most likely to have access to facts concerning the reasons for delay and which bears the responsibility for determining when an investigation should end.

4. EVIDENCE — HEARSAY — BUSINESS RECORDS.

A proper foundation must be established before a document may be admitted into evidence as a business record under the business record exception to the hearsay rule; in order to

establish a proper foundation, a qualified witness must establish that the record was kept in the course of a regularly conducted business activity and that it was the regular practice of such business activity to make that record (MRE 803[6]).

5. Evidence — Cumulative Evidence.

A trial court has broad discretion to exclude needlessly cumulative evidence (MRE 403).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *G. Scott Stermer,* Prosecuting Attorney, and *Jo Ellen O'Connor,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Peter Jon Van Hoek),* for defendant on appeal.

Before: Allen, P.J., and Hood and W. S. White,* JJ.

W. S. White, J. Defendant Stanley Vargo was convicted of welfare fraud over $500, MCL 400.60(2); MSA 16.460(2), following a jury trial in the Tuscola County Circuit Court. Defendant appeals as of right raising five issues for our consideration.

Defendant and his wife originally qualified for $440 per month in ADC benefits, paid in two equal installments each month. MCL 400.60(2); MSA 16.460(2) places an affirmative duty on anyone receiving benefits under the Social Welfare Act to report any change in circumstances which would decrease the amount of the grant. The information in the instant case alleged that during the period of August through October, 1980, defendant did not notify the Department of Social Services that he was employed and therefore ineligible to receive benefits. Although no single benefit payment was in excess of $500, the total amount of benefits

* Circuit judge, sitting on the Court of Appeals by assignment.

paid during that time period was between $1,500 and $1,700.

Defendant first argues that the prosecutor should have been precluded from aggregating benefit payments to reach the statutory $500 felony limit. We disagree.

In *People v Raymond Smith,* 84 Mich App 376, 379; 269 NW2d 469 (1978), the defendant was convicted of welfare fraud over $500 under MCL 400.60(2); MSA 16.460(2). It is clear that the total amount of benefits received during the defendant's period of ineligibility were aggregated to reach the statutory $500 limit. The Court in *Smith,* however, did not directly address the issue of aggregation, and therefore we do so now.

Defendant herein relies on *People v Robinson,* 97 Mich App 542; 296 NW2d 99 (1980). In *Robinson,* this Court reversed a conviction for larceny by false pretenses over $100, which was based on aggregating separate unemployment benefit checks in order to meet the statutory $100 limit. In ruling the aggregation improper, this Court noted that "defendant's individual and separate acts did not meet the criterion of the same transaction test, *viz.,* occurring in a continuous time sequence and displaying a single intent and goal". *Robinson,* pp 551-552. In so holding, this Court was specifically relying on the "same transaction" double jeopardy cases, set forth in *People v White,* 390 Mich 245; 212 NW2d 222 (1973), and *Crampton v 54-A District Judge,* 397 Mich 489; 245 NW2d 28 (1976). *Contra,* Anno, 22 ALR4th 534, 604, § 16. Since this Court's decision in *Robinson,* however, the Michigan Supreme Court has specifically disavowed this test. *People v Wakeford,* 418 Mich 95, 111; 341 NW2d 68 (1983).

More importantly, the defendant in *Robinson* was charged with larceny by false pretenses, not

with welfare fraud. A conviction for larceny by false pretenses required a finding that defendant obtained her unemployment checks through a misrepresentation of a past or present fact. If defendant had not returned and made a new representation regarding her continued unemployment, she would not have received her unemployment check. This Court therefore held that

"as each act necessitated an additional false statement, they were not the result of a single intent and goal. Every two weeks, defendant had to make another false statement in order to get an additional separate and distinct benefits check. Since defendant could only receive another check after falsely swearing anew that she had not worked and thus was still elegible for unemployment benefits, each of the misrepresentations was distinct and separate." 97 Mich App 552.

The instant case, however, was brought under MCL 400.60(2); MSA 16.460(2), and therefore the reasoning in *Robinson* is inapplicable. The amount of benefits received by defendant in the instant case was determined by information initially supplied by defendant. If the DSS is never informed of a change in circumstances, it will continue making payments based upon the initial information. MCL 400.60(2); MSA 16.460(2) makes it a crime to neglect or refuse to provide certain information. It does not require that a false statement be made. Therefore, the instant case is significantly different from *Robinson,* where an essential element of the offense was always missing until a new representation was made concerning defendant's continued unemployment. Under the welfare fraud statute, once a person has neglected or refused to provide the information, the crime is complete except for determining the amount of relief improperly obtained. There is no basis for an argument that

these are separate and distinct frauds. We therefore hold that the aggregation was proper, and defendant's motion to quash the information was properly denied.

Defendant next argues that he was denied due process when the prosecutor, after the charge was dismissed following the first preliminary examination, issued a new complaint and warrant on the same charge. This Court has recognized that repeated prosecutions of a defendant for the same offense may violate the defendant's right to due process. *People v Turmon,* 128 Mich App 417; 340 NW2d 110 (1983); *People v George,* 114 Mich App 204; 318 NW2d 666 (1982), *lv den* 414 Mich 931 (1982). Among the factors to be considered in determining whether a due process violation has occurred are the reinstitution of charges without additional, noncumulative evidence not introduced at the first preliminary examination, the reinstitution of charges to harass and judge-shopping to obtain a favorable ruling. *People v George, supra; People v Turmon, supra; People v Walls,* 117 Mich App 691; 324 NW2d 136 (1982).

We do not find that the reinstitution of the charge against defendant was violative of due process. At the second preliminary examination new evidence was presented to the same judge who presided over defendant's initial preliminary examination. While the new evidence could have been introduced at the first preliminary examination, the failure to do so was more a product of neglect than a deliberate attempt to harass defendant. *People v Laslo,* 78 Mich App 257, 260; 259 NW2d 448 (1977). The trial court, therefore, did not abuse its discretion in binding defendant over for trial.

Defendant also asserts that the lapse of time between the date of his alleged offense and the

initiation of prosecution denied him due process. Defendant was charged with fraudulently receiving welfare benefits for the period of August to October, 1980. Defendant was initially charged on July 6, 1981. In *People v Bisard,* 114 Mich App 784, 791; 319 NW2d 670 (1982), this Court stated the test to be used in determining whether a delay in instituting prosecution denies a defendant due process.

"[W]e hold that, once a defendant has shown some prejudice, the prosecution bears the burden of persuading the court that the reason for the delay is sufficient to justify whatever prejudice resulted. This approach places the burden of coming forward with evidence of prejudice on the defendant, who is most likely to have facts regarding prejudice at his disposal. The burden of persuasion rests with the state, which is most likely to have access to facts concerning the reasons for delay and which bears the responsibility for determining when an investigation should end."

The prejudice which defendant claims resulted from the delay was the loss of a carbon copy of a letter sent to the DSS informing it of his employment. At trial, the police officer who investigated the complaint testified that he interviewed defendant on February 9, 1981. At that time, defendant said nothing about the existence of a copy of the letter. A DSS investigator interviewed defendant in March, 1981, at which time defendant stated that he did not have a copy of the letter. At trial, defendant testified that he never made, kept or saw a carbon copy of the letter. His belief that a copy existed was based solely upon his wife's telling him that a copy was made. Defendant's wife did not testify at trial, and the DSS had no record of a letter having been written.

The fraud referral from defendant's caseworker

was received by the DSS investigator in January, 1981. Within one month, defendant was contacted by the investigating police officer, and no copy of the letter was mentioned. Within two months after the investigation began, the copy was claimed to be missing. Certainly the existence of a copy of the letter would have benefited defendant. However, we do not believe that its inexplicable absence can be attributed to the short delay in instituting the investigation. We therefore hold that defendant has not met his burden of coming forward with sufficient evidence of prejudice and affirm the trial court's denial of defendant's motion to dismiss.

In his fourth allegation of error, defendant argues that the trial court erred in refusing to admit into evidence a form provided to defendant when he applied for CETA employment. The form contained, *inter alia,* an authorization signed by defendant allowing the DSS and CETA to exchange information. Defendant sought to have the form admitted as a business record under MRE 803(6) and, alternatively, as a public record under MRE 803(8).

For a proper foundation to be established for the admission of this document as a business record, a qualified witness must establish that the record was kept in the course of a regularly conducted business activity and that it was the regular practice of such business activity to make that record. MRE 803(6). Knowledge of the business involved and its regular practices are necessary. Defendant admitted that his contact with CETA was extremely limited. He was not able to establish that it was a regular practice of CETA to complete that report. He therefore was not qualified to establish a proper foundation for the admission of the form, and the objection was properly sustained. We note that defendant could have subpoenaed a CETA

employee to lay a proper foundation in that manner.

Turning to the public records exception, the form included five questions and answers and an authorization for DSS and CETA to exchange information. That information does not fall into either category of MRE 803(8). The authorization merely allows the exchange of information; it does not state that the information is, has been, or will be exchanged. The questions and answers do not constitute matters observed. Rather, they are merely a written record of defendant's statements.

We further note that defendant sought the introduction of the form to show the exchange of information concerning defendant's employment between CETA and DSS. As stated previously, the authorization allows the exchange of information but does not state that the information is or was exchanged. The authorization to exchange information was testified to by DSS employees, and therefore defendant was able to establish that the authorization was made. The trial court has broad discretion to exclude needlessly cumulative evidence. MRE 403. We therefore affirm the trial court's ruling.

Lastly, defendant argues that the trial court's questioning of a prosecution witness elicited evidence of an inadmissible adoptive admission of defendant. Defendant's caseworker testified that she called defendant and told him that his benefits had been terminated due to his CETA employment. Upon questioning by the trial court, the witness testified that defendant did not respond. We can find nothing in this exchange that suggested that defendant had been accused of not reporting his employment. The only inference that could be drawn was that defendant had tacitly acknowledged that he was, in fact, employed at

that time, a fact never disputed by defendant at trial. We therefore find no error.

Affirmed.