2005 UT App 379

**STATE of Utah, Plaintiff and Appellee,**

v.

**Daniel Bagley ROGERS, Defendant and Appellant.**

**No. 20030953–CA.**

Court of Appeals of Utah.

Sept. 9, 2005.

---

Debra Meek Nelson and Shannon N. Romero, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Mark L. Shurtleff, Attorney General's Office and Jeffrey S. Gray, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges BENCH, ORME, and THORNE.

OPINION (For Official Publication)

ORME, Judge:

¶ 1 Appellant Daniel Rogers argues that the State presented insufficient evidence at his first preliminary hearing to bind him over on a count of receiving stolen property, *see* Utah Code Ann. § 76–6–408 (2003), charged as a second degree felony under Utah Code section 76–6–412. *See id.* § 76–6–412. He also contends that the trial court erred in validating the magistrate's decision to continue the preliminary hearing to permit the State to put on additional evidence at a later date and instead should have quashed his bindover. We agree and reverse.

## BACKGROUND

¶ 2 On the night of July 23, 2002, Robert Hildebrand returned from work to find that his apartment had been burglarized. After discovering that a number of his things were missing, including twelve autographed baseballs, approximately ten binders full of base-ball cards, and several individually encased baseball cards, a few of which were also autographed, Hildebrand contacted the police. The next day he called local baseball card shops, advised the proprietors of some of the cards taken from his apartment, and asked them to be on the lookout for anyone attempting to sell the stolen cards. Hildebrand soon received a call from an owner of one of the card shops, informing him that two individuals had just visited his shop and had sold the owner a few of the cards Hildebrand had mentioned. The owner later testified that when the individuals offered to sell him the cards, he wrote them out a check, but the amount of the check had no relation to the true value of the cards. After the individuals left the shop, the owner stopped payment on the check and notified Hildebrand that his cards were available at the shop. Hildebrand again contacted the police.

¶ 3 The same afternoon that Hildebrand talked to the owner of the baseball card shop, Detective Clinton Johnson responded to a call from the West Valley Police Department prompted by an attempt to cash the baseball card shop's check. Two individuals were being detained at a check-cashing facility in West Valley. Rogers was one of the individuals. When Detective Johnson arrived at the check-cashing facility, he interviewed Rogers about the cards he had tried to sell to the card shop owner. Rogers then explained that he found the baseball cards near a dumpster while cleaning out a storage unit in North Salt Lake. When Detective Johnson questioned Joshua Boone, the other individual being detained, Boone indicated that Rogers had asked Boone for a ride to the baseball card shop to sell some baseball cards. In a search of the car incident to Rogers's arrest, the police found several baseball cards in binders in the trunk, and an autographed baseball and an individually encased baseball card inside the car. Hildebrand later confirmed that the items were his. A subsequent search of Boone's apartment revealed more of Hildebrand's missing things.

¶ 4 The State then charged Rogers with one count of theft by receiving stolen property, a second degree felony, *see* Utah Code Ann. §§ 76–6–408, –412 (2003), and one count

of theft by deception, a class B misdemeanor. *See id.* § 76-6-405.

¶ 5 At the initial preliminary hearing on the charges, the State elicited testimony from Hildebrand, the baseball card shop owner, and Detective Johnson. On cross-examination, defense counsel attempted to establish that items having a value of at least $5,000 had not been taken from Hildebrand's apartment, much less been received by Rogers. In so doing, defense counsel elicited testimony from the baseball card shop owner that he could not name, nor could he place a price on, the cards presented to him at the card shop. Defense counsel also questioned Hildebrand about specific items taken from his apartment and their respective values; however, Hildebrand had difficulty in providing any details concerning the stolen items and their values. For example, when defense counsel questioned Hildebrand about the autographed baseballs and who had signed them, Hildebrand responded that he could not remember and "would have to bring you the list." Similarly, when questioned about the binders containing approximately six sets of specialized cards, he responded that he had not prepared an itemized list of the cards making up the sets nor of the values of the cards. Finally, defense counsel asked Hildebrand about the individually encased cards that were stolen from him, and he responded that although he had receipts at his home that listed the prices of the cards, he did not have the receipts with him at the hearing.

¶ 6 At the close of the State's case, defense counsel argued against bindover on the receiving stolen property charge, contending that the State presented insufficient evidence to establish that Rogers possessed items from Hildebrand's apartment having a value of at least $5,000, the minimum amount required to constitute a second degree felony. *See id.* § 76-6-412(1)(a)(i). Specifically, defense counsel argued that the witnesses had testified only to approximate values of the stolen items and that there was no proof, other than the "victim's speculation," as to those values. The magistrate agreed with

defense counsel and allowed the State to reopen its case to present more evidence on the value issue. The State recalled Detective Johnson to the stand, but his additional testimony shed little light on value. After the State presented its additional testimony, defense counsel again argued that the State had failed to present sufficient evidence to bind Rogers over on a second degree felony charge. The magistrate responded that he was satisfied that Rogers should be bound over on some charge, but that he needed more evidence on value to support a second degree felony charge. Therefore, over Rogers's objection, he continued the hearing to a later date.

¶ 7 At the second installment of Rogers's preliminary hearing, the State introduced eleven photographs of the items recovered and utilized an itemized list that Hildebrand had made of the missing property and its value. The State presented evidence sufficient to satisfy the magistrate that Rogers had received at least $5,000 worth of items from Hildebrand's apartment. Thus, the magistrate bound Rogers over on the charge of theft by receiving stolen property, a second degree felony.[1] Rogers filed a motion to quash the bindover, which the trial court denied. Rogers entered a conditional guilty plea to an amended charge of theft by receiving stolen property, a third degree felony, and was subsequently sentenced to an indeterminate term not to exceed five years and fined $5,000. Consistent with the terms of his conditional plea, Rogers now appeals the denial of his motion to quash the bindover.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Rogers makes two claims on appeal. First, Rogers relies on *State v. Brickey*, 714 P.2d 644 (Utah 1986), which held that criminal charges dismissed at a preliminary hearing for insufficient evidence may only be refiled upon the State's showing of "new or additional evidence or other good cause." *Id.* at 645. He argues that *Brickey* should be extended to cover the situation, as in the instant case, when a magistrate continues a preliminary hearing after an initial determi-

---

1. The magistrate found insufficient evidence to bind Rogers over on the charge of theft by decep- tion and dismissed that charge. The theft by deception charge is not at issue in this appeal.

nation of insufficient evidence. The "interpretation of case law ... presents a question of law reviewed for correctness." *State v. Morgan*, 2001 UT 87,¶ 1, 34 P.3d 767.

¶ 9 Second, Rogers contends that, under *Brickey*, the magistrate was precluded from continuing the preliminary hearing because the State did not demonstrate that it had "innocently miscalculate[d] the quantum of evidence required to obtain a bindover," 714 P.2d at 647 n. 5, a subcategory of "other good cause" under *Brickey*. This issue involves interpretation of case law and is also reviewed for correctness. *See Morgan*, 2001 UT 87 at ¶ 1, 34 P.3d 767.

## ANALYSIS

### I.  Applicability of *Brickey*

■ ¶ 10 We first address the question of whether the rule announced in *State v. Brickey*, 714 P.2d 644 (Utah 1986), applies to situations where a magistrate continues a preliminary hearing after determining that the prosecution presented insufficient evidence to bind a defendant over. Rogers argues that *Brickey* should control such situations.

¶ 11 Rule 7 of the Utah Rules of Criminal Procedure permits the State to refile a charge against a criminal defendant after it has been dismissed and the defendant has been discharged by a magistrate. *See* Utah R.Crim. P. 7(i)(3). Nevertheless, in recognition of a defendant's due process rights under the Utah Constitution, the Utah Supreme Court has limited the scope of rule 7 by permitting a prosecutor to refile a criminal charge that has been dismissed at a preliminary hearing for insufficient evidence only when "new or previously unavailable evidence has surfaced or [when] other good cause justifies refiling." *Brickey*, 714 P.2d at 647. Rogers now urges this court to extend

*Brickey's* due process protections to continuances of preliminary hearings.

¶ 12 We note that, thus far, *Brickey* and its progeny only address outright dismissals followed by refilings. *See id.; State v. Redd*, 2001 UT 113, 37 P.3d 1160; *State v. Morgan*, 2001 UT 87, 34 P.3d 767; *State v. Atencio*, 2004 UT App 93, 89 P.3d 191; *State v. Fisk*, 966 P.2d 860 (Utah Ct.App.1998). In this case, the charge against Rogers was not dismissed and refiled. Rather, the magistrate allowed the prosecution to reopen its case after it had already rested,[2] and then later continued the preliminary hearing to a later date in order to provide the prosecution an opportunity to produce more evidence on the value of the items. The magistrate never dismissed the charge against Rogers, and the State was thus spared having to refile. Nevertheless, the potential for abuse by the prosecution and for harm to the defendant, condemned by *Brickey*, is essentially the same here as it is in the situation expressly dealt with by *Brickey*.

¶ 13 We recognize the wisdom of *Brickey* and the important policy considerations underlying its rule. We cannot agree that the *Brickey* rule can be avoided by the simple device of asking for a continuance instead of permitting dismissal once the magistrate indicates there is insufficient evidence for bindover. *Brickey* effectively protects the rights due a defendant by permitting refiling only when new evidence surfaces or other good cause exists. *See* 714 P.2d at 647. It simply will not do to permit astute prosecutors to completely avoid *Brickey* by getting a preliminary hearing continued, rather than charges dismissed, upon learning that the magistrate does not believe the State's evidence, as initially presented, is sufficient to bind a defendant over. This decision is reinforced by our realization that several of the harms sought to be avoided by *Brickey*—e.g., coddling a lack of preparation by giving the

---

**2.**  Rogers additionally argues that permitting the State to reopen its case, as happened at Rogers's original preliminary hearing, also triggers *Brickey* concerns and thus should similarly be precluded under *Brickey*. *See State v. Brickey*, 714 P.2d 644, 647 (Utah 1986). Here, the reopening of the State's case did not pose the same potential for prosecutorial abuse as did the continuance. Rogers and the same attorneys and witnesses

were still present in the courtroom, thus alleviating any concern about harassment of Rogers by dragging him and his counsel back into the courtroom on multiple occasions. *See generally Jones v. State*, 481 P.2d 169, 171 (Okla.Crim.App. 1971). In view of our disposition of the other issues, we have no need to resolve this issue, and we decline to do so.

prosecution multiple opportunities to prove it has a case, harassing or inconveniencing defendants through multiple court appearances, and imposing on the time of witnesses and the limited resources of the judicial system— are equally present whether the subsequent hearing is triggered by refiling dismissed charges or by continuing the preliminary hearing to a later date. Indeed, from the standpoint of defendants, there is little practical difference between the two. Accordingly, we hold that the *Brickey* doctrine applies in this case.

¶ 14 Because neither side alleges that "new or previously unavailable evidence ha[d] surfaced" after the initial preliminary hearing, *id.*, we analyze whether the State "innocently miscalculate[d] the quantum of evidence required to obtain a bindover," a subcategory of "other good cause" under *Brickey, id.* at 647 n. 5, and, if not, whether the State's seemingly cavalier preparation for the preliminary hearing warranted the magistrate's decision to continue the preliminary hearing.

## II. Innocent Miscalculation of the Quantum of Evidence

¶ 15 "To fairly evaluate [Rogers's] claim, the nature and purpose of a preliminary hearing must first be considered." *State v. Brickey*, 714 P.2d 644, 646 (Utah 1986). A preliminary hearing's "fundamental purpose ... is the ferreting out of groundless and improvident prosecutions." *State v. Anderson*, 612 P.2d 778, 783–84 (Utah 1980). Therefore, the prosecution "must present a quantum of evidence sufficient to warrant submission of the case to the trier of fact," *id.* at 783, in order to "relieve[ ] the accused from the substantial degradation and expense incident to a modern criminal trial when the charges against him are unwarranted or the evidence insufficient." *Id.* at 784.

"This, also, demands the application of certain basic procedural safeguards" at the preliminary hearing since "the efficient administration of the preliminary examination" may serve to eliminate any "grave injustice suffered by the defendant." *Id.*

¶ 16 Against this background, "due process considerations" prompted the Utah Supreme Court to limit a prosecutor's ability to refile criminal charges previously "dismissed for insufficient evidence unless the prosecutor can show that new or previously unavailable evidence has surfaced or that other good cause justifies refiling." *Brickey,* 714 P.2d at 647. In *State v. Morgan,* 2001 UT 87, 34 P.3d 767, the Court refined the *Brickey* rule and held that when refiling involves "potentially abusive practices" that implicate a defendant's due process rights, the presumption is that refiling is barred. *Id.* at ¶ 16. Among other things, the Court noted the potential for harassment that repeated refilings entailed. *See id.* at ¶ 13. In *Jones v. State,* 481 P.2d 169 (Okla.Crim.App.1971), the case upon which the Court primarily relied in *Brickey,* the Oklahoma Court of Criminal Appeals stated that "[n]ot only is refiling without cause unnecessarily burdensome to our overcrowded courts, but it may constitute harassment of an accused." *Id.* at 171.

¶ 17 However, if refiling does not implicate a potentially abusive practice, then no presumptive bar exists. *See Morgan,* 2001 UT 87 at ¶ 16, 34 P.3d 767.[3] Therefore, if the prosecution can show under *Brickey* that new or previously unavailable evidence has surfaced or that other good cause justifies refiling, the State may refile. *See id.* at ¶ 19. In *Morgan,* the Utah Supreme Court recognized "innocent miscalculation" by the prosecutor of "the quantum of evidence necessary to obtain a bindover" as a subcategory

---

**3.** In *State v. Morgan,* 2001 UT 87, 34 P.3d 767, the Utah Supreme Court offered examples of cases where potentially abusive practices are not implicated. *See id.* at ¶ 16. One example cited by the Court gives us some pause. In *State v. Vargo,* 139 Mich.App. 573, 362 N.W.2d 840 (1985), the Michigan Court of Appeals held that neglect was not a potentially abusive act. *See id.* at 842–43. The sparse facts in the Michigan case fail to illuminate why the Michigan court held that neglecting to put on available evidence in

the first preliminary hearing did not constitute a potentially abusive act. Therefore, we are unable to analyze the court's reasoning in so holding. In the present case, the facts demonstrate that the prosecution's rank unpreparedness constitutes a potentially abusive act. Thus, because *Vargo* is virtually silent on this issue, our analysis is not constrained by that case, notwithstanding the apparent approval of it in *Morgan. See Morgan,* 2001 UT 87 at ¶ 16, 34 P.3d 767.

of "other good cause." *Id.* at ¶ 21 (internal quotations omitted). *See also id.* at ¶ 19 (expressly adopting "innocent miscalculation as a subsection of other good cause," after noting *Brickey* had not "specifically" done so). The Court has subsequently reiterated that "when a prosecutor innocently miscalculates the quantum of evidence necessary to bind over a defendant, due process violations are not necessarily implicated when charges are refiled." *State v. Redd,* 2001 UT 113, ¶ 13, 37 P.3d 1160.

¶ 18 In *Morgan,* the defendant was charged with possession of methamphetamine with intent to distribute and possession of marijuana. *See* 2001 UT 87 at ¶ 2, 34 P.3d 767. At the preliminary hearing, a police officer testified to the defendant's purported intent to distribute methamphetamine found inside her vehicle. *See id.* Because the police officer had only limited experience in drug recognition, packaging, and use, the court found the officer's testimony about the inferences to be drawn from how the drugs were packaged insufficient to establish an intent to distribute the drugs. *See id.* at ¶¶ 3–4. The State moved to reopen the case to put a second, more experienced officer on the stand, but the trial court denied the State's request and dismissed the charge. *See id.* The State then refiled. *See id.* At the second preliminary hearing, the more experienced officer testified concerning the intent to distribute, and the magistrate then determined there was sufficient evidence to bind defendant over as charged. *See id.* at ¶ 6.

¶ 19 On appeal, the Utah Supreme Court agreed with the State that under the "other good cause" exception of *Brickey,* the State was not barred from refiling because it innocently miscalculated the quantum of evidence needed to secure bindover. *See id.* at ¶ 21. The Court noted in *Morgan* that although " 'fundamental fairness,' the touchstone of due process," precluded the State from harassing a defendant through repeated refilings, *id.* at ¶ 15, no abusive practice occurred in this case because the State had been initially prepared to offer the second officer's testimony but innocently believed that the

first officer's testimony would be sufficient. *See id.* at ¶¶ 21–25.

¶ 20 In contrast, in *State v. Redd,* 2001 UT 113, 37 P.3d 1160, the Utah Supreme Court held that the State had not established good cause under *Brickey* because the magistrate's refusal to bind the defendant over due to lack of evidence was not a result of an innocent miscalculation by the State. *See id.* at ¶ 17. Instead, the State failed to produce any evidence on an essential element of the crime charged. *See id.* Disapproving of the State's omission, the Court held "that a potentially abusive practice exists where the State refiles a charge when it has been dismissed for the State's failure to provide any evidence on a clear element of the relevant criminal statute." *Id.* Moreover, it was potentially abusive for the prosecution to fail to "extrapolate ... three simple elements [from the relevant statute] and provide evidence sufficient for a bindover." *Id.* at ¶ 14. The Court noted that its holding was consistent with *Brickey,* "where the prosecutor failed to introduce any evidence of an element of forcible sexual assault, and we held that due process rights of the defendant were therefore violated when the prosecutor refiled the charge." *Id.* at ¶ 17.

¶ 21 As previously indicated, in cases where the State fails to adduce sufficient evidence to warrant bindover at a defendant's initial preliminary hearing, we see no difference between a reconvened preliminary hearing, prompted by a continuance, and a second preliminary hearing, prompted by the refiling of charges. In either scenario, *Brickey* applies. In the case before us, the State argues that the prosecution innocently miscalculated the quantum of evidence needed to establish a second degree felony, i.e., that $5,000 worth of stolen property had been received by Rogers. In determining whether the State innocently miscalculated the amount of evidence necessary to warrant bindover, the present case is more like *Redd* than *Morgan.* In *Morgan,* the prosecutor was prepared to offer sufficient evidence on the elements of the crime charged, but innocently believed that testimony elicited from one officer would be sufficient to establish intent, *see* 2001 UT 87 at ¶¶ 4, 25, 34 P.3d

767, whereas in both *Redd* and the case at bar, the prosecutors were unprepared to present evidence on an essential element of the crime charged. *See* 2001 UT 113 at ¶ 17, 37 P.3d 1160.

¶ 22 In the case at hand, the State was wholly unprepared to offer evidence that property having a value over $5,000 was received by Rogers. Value was not an insignificant detail. Evidence of the value of the items is a clear and essential element in establishing a second degree felony charge of theft by receiving stolen property. *See* Utah Code Ann. § 76–6–412(1)(a)(i) (2003) (stating that value of property must exceed $5,000 to constitute second degree felony). Here, the State was required to prove under section 76–6–412 that Rogers possessed stolen items having a value of at least $5,000 in order to bind him over on a second degree felony charge. However, the State was unprepared at the original preliminary hearing, even with the second chance when the magistrate permitted it to reopen its case, to offer testimony or other evidence that would meet this burden.

¶ 23 The colloquy that took place between defense counsel and the witnesses during cross-examination demonstrates the State's lack of preparation. When questioned closely by defense counsel about the value of some of the stolen items, Hildebrand admitted that he could have prepared itemized lists, but either had not done so or had not brought the lists with him, and therefore could not testify to exact values of specific items taken. The baseball card shop owner testified that he did not know which players were pictured on the cards he saw nor the value of the cards that were sold to him. Detective Johnson testified that he found several baseball cards in folders, an individually encased baseball card, and an autographed baseball in Boone's car, but did not testify specifically about which player was on the sealed card, how many cards were found in the binders, or who autographed the baseball.[4] In short,

he had a good general recall of what he found, but no demonstrated expertise in valuing such items.

¶ 24 Defense counsel argued at the initial close of the State's case that with respect to the baseball memorabilia, testimony was given only as to vague approximations rather than exact, or even reasonably estimated, values. The magistrate expressed his concern that he did not know "how many baseball cards or sets of baseball cards were actually recovered, and [he would] have to make a—an assumption that the value of the cards" would meet the minimum requirement for preliminary hearings because he did not "have any information on [those values]."

¶ 25 Hildebrand's and defense counsel's colloquy also indicates that this was not a situation where the evidence was unavailable to the State at the time despite its diligent effort to obtain it. On the contrary, it is apparent that the evidence was readily available and the State was simply dilatory in assembling it. Hildebrand stated numerous times that he could, upon request, prepare a list of items stolen or that, while he had prepared such a list, he did not have it with him but could "bring [counsel] the list." Apparently he had either not been "prepped" for his testimony by the prosecutor or, in the course of preparation, such as it was, the prosecutor neglected to mention, or at least to adequately emphasize, the pivotal role of value and the necessity of preparing an itemization or bringing in the receipts and other documentation Hildebrand apparently had. And the fact that at the second preliminary hearing the State presented eleven photographs of the items recovered, as well as produced itemized lists prepared by Hildebrand, further demonstrates the State's lack of basic preparation for the preliminary hearing when first convened. The State has provided no reason why this evidence could not have been produced at the original preliminary hearing, and we are not convinced that

---

4. It goes without saying that all baseball memorabilia is not of equal value. For example, a Willie Mays rookie card in mint condition, or a baseball hit out of Yankee Stadium by Mickey Mantle and autographed by him the same day, may be worth hundreds or thousands of dollars. But a package of thirty run-of-the-mill baseball cards may be purchased at a discount store for a dollar, and a baseball autographed by an unknown minor league player may have no value beyond sentimental value.

such dilatory preparation amounts to an innocent miscalculation.[5]

¶ 26 We are likewise unpersuaded that unpreparedness constitutes "other good cause." In *State v. Atencio*, 2004 UT App 93, 89 P.3d 191, this court upheld the State's decision to refile a charge after it had already been dismissed. *See id.* at ¶ 19. At the first preliminary hearing, the prosecution could not proceed because the prosecutor had "misplaced her file." *Id.* at ¶ 15. This court noted that "there was a good faith basis for the prosecutor's [inability to proceed]: She was unable to locate her file and therefore could not present evidence at the preliminary hearing. There was no indication that her missing file was anything but 'innocent.'" *Id.* at ¶ 17 (citation omitted).

¶ 27 In the case before us, the prosecution's decision to arrive at the preliminary hearing unprepared is not so similarly innocent. While one can innocently misplace a file, one does not innocently forget that witnesses need to be prepared if they are to give cogent testimony. Unlike in *Atencio*, where the prosecutor was prepared to proceed but for a mere oversight in misplacing her file, here the prosecutor was simply unprepared to present sufficient evidence on the value issue.

¶ 28 " 'Fundamental fairness,' the touchstone of due process," *State v. Morgan*, 2001 UT 87, ¶ 15, 34 P.3d 767, dictates that an unprepared prosecutor should not be free to proceed against a defendant multiple times until her preparation finally reaches the minimal level required for bindover. A prosecutor should not have—and does not have—unbridled discretion to refile charges (or continue hearings) until his preparation reaches the required level. *See id.* at ¶ 13 ("[G]ranting the State unbridled discretion in determining whether to refile charges raises the intolerable specter of the State's continually harassing a defendant who previously

had charges dismissed for insufficient evidence.").

¶ 29 Since the State's dilatory preparation was not an innocent miscalculation, and the prosecution's unpreparedness does not constitute "other good cause," it follows that the magistrate violated the policy of *Brickey* in granting the continuance. The magistrate's decision to allow the prosecution to continue, despite his concern about the level of evidence presented,[6] and despite the prosecution's apparent unpreparedness, was in error. It follows that the trial court also erred when it denied Rogers's motion to quash the bindover.

¶ 30 A word or two about the dissenting opinion is in order. The third point of the dissent is perfectly reasonable. *Brickey* has heretofore been only applied to dismissals for lack of evidence rather than to continuances of preliminary hearings for lack of evidence. It is a judgment call on whether the two procedures are so dissimilar, and whether the dangers addressed in *Brickey* are simply not present in the continuance situation, so as to countenance against applying *Brickey* to continuances as well as dismissals.

¶ 31 We do not begrudge our colleague his divergent opinion in this regard. It is true that lawyers file different papers and speak different words in each situation. It seems to us, however, that from the standpoint of the defendant who is to be called back to court multiple times on the same charge because the prosecution is unprepared, any distinction between a dismissal with refiling and a continuance of an earlier hearing is pretty meaningless.

¶ 32 The validity of the dissent's second point, concerning the discretionary nature of continuances, rises and falls with who is right about the application of *Brickey*. If the dissent is right, then it is difficult to say the decision to grant a continuance in this case was an abuse of discretion. Conversely,

---

5. During the preliminary hearing, the prosecutor stated that the "subpoenas got mixed up" as the reason why some of the evidence pertaining to value was not available at the hearing, although it is far from clear what evidence needed to be subpoenaed. All relevant evidence seemed to be in the hands of the police or Hildebrand.

6. In fact, the magistrate noted his general concern that the level of evidence being presented at preliminary hearings has been decreasing: "I am seeing some real bare minimums on preliminary hearings that make me a little uncomfortable."

if we are right, then the mistake of law which led to the continuance necessarily means that the continuance was an abuse of discretion. Very simply, no judge has the discretion to ignore the law.

¶ 33 We cannot be so conciliatory where the first point of the dissenting opinion is concerned. It is simply not possible that in a case of this sort, value is inconsequential to a bindover determination. *See State v. Green,* 2000 UT App 33, ¶ 9, 995 P.2d 1250 (noting that the elements of felony theft are distinct from the elements of misdemeanor theft). If it were, a defendant who was charged with second degree felony theft—a crime requiring the theft of property having a value of at least $5,000, *see* Utah Code Ann. § 76-6-412(1)(a)(i) (2003)—could be bound over as charged upon evidence showing he stole a package of chewing gum. This is of course not done. Any magistrate confronted with that evidence would bind the defendant over only on a class B misdemeanor theft charge, as the property stolen would have a value of less than $300. *See id.* § 76-6-412(1)(d).

¶ 34 The dissent's other argument about value is just a replay of the same mistake that largely explains the prosecution's failure in its first couple of bites at the apple. This is not a theft case; it is a theft by receiving case. *See* Utah Code Ann. § 76-6-408 (2003). Thus, it does not matter how much property was taken from the victim. Only the value of the property found in Rogers's actual or constructive possession matters here. *State v. Mast,* 2001 UT App 402, ¶¶ 16, 24, 40 P.3d 1143. The prosecution had the victim primed to testify that over $10,000 in property was stolen from him, but completely unprepared to testify about the value of the stolen property found with Rogers.

¶ 35 Yes, the victim testified that some $10,000 in baseball memorabilia was stolen from him and some other items as well. He also testified that only some of that property was found to be in the possession of Rogers. And what was the victim's key testimony about the value of that portion of the stolen property specifically tied to Rogers? It was basically this: With respect to the autographed baseballs found with Rogers, the victim "would have to bring you the list"; with respect to a group of specialized baseball cards, the victim would have to prepare a list of the cards and their values; with respect to the individually encased cards found with Rogers, the victim would have to find his receipts.

¶ 36 The magistrate in this case had it right when he concluded at the end of the first preliminary hearing, in which he had already given the State a second chance to get its act together, that there was evidence to warrant binding Rogers over on some charge, but not enough evidence to support binding him over on a second degree felony charge of theft by receiving. The only issue which should properly divide us from our dissenting colleague is whether, confronted with that situation, the magistrate should have bound the defendant over on a lesser charge (or dismissed the charge as filed and left the State to refile if it could do so consistently with *Brickey* ) or whether he was free to continue the hearing to a later date and give the State a third chance to make the minimal showing necessary to establish probable cause for the offense charged, i.e., the second-degree felony variant of theft by receiving.

## CONCLUSION

¶ 37 A prosecutor may not circumvent *Brickey's* protections by continuing a preliminary hearing rather than refiling charges. The principles of *Brickey* regulate both situations. The prosecution's decision to arrive unprepared at the preliminary hearing does not constitute an "innocent miscalculation," *State v. Morgan,* 2001 UT 87, ¶ 19, 34 P.3d 767, nor does it constitute "other good cause." *State v. Brickey,* 714 P.2d 644, 647 (Utah 1986). Accordingly, the magistrate erred in continuing the preliminary hearing to a later date, having already permitted a reopening of the State's case, and the trial court erred in not quashing the bindover. We remand to the trial court with instructions to quash Rogers's bindover on the second degree felony charge and for such other proceedings as may now be appropriate.

¶ 38 I CONCUR: WILLIAM A. THORNE JR., Judge.

BENCH, Associate Presiding Judge (dissenting):

¶ 39 Defendant Rogers was charged with theft by receiving stolen property. *See* Utah Code Ann. § 76–6–408 (2003). The elements of this crime are: "(1) the defendant received, retained, or disposed of the property of another, (2) knowing that the property had been stolen or believing that it probably had been stolen, (3) with the purpose to deprive the owner thereof." *State v. Hill,* 727 P.2d 221, 223 (Utah 1986). My colleagues do not question that the State, at the initial preliminary hearing, presented sufficient evidence of each of these elements.

¶ 40 My colleagues do question the sufficiency of the evidence of value, under the mistaken belief that "evidence of the value of the stolen items is a clear and essential element" of the offense for purposes of the preliminary hearing. In support of this proposition, the main opinion cites Utah Code section 76–6–412(1)(a)(i). *See* Utah Code Ann. § 76–6–412(1)(a)(i) (2003). However, the Utah Supreme Court, construing section 76–6–412(1)(a)(i), has held that this section "does not outline the elements of the crime of theft; it simply categorizes theft for sentencing purposes into various degrees of felonies and misdemeanors." *State v. Branch,* 743 P.2d 1187, 1192 (Utah 1987); *see also State v. Casias,* 772 P.2d 975, 978 (Utah Ct.App.1989). Therefore, evidence of value is not critical at the preliminary hearing stage. At a preliminary hearing, the State has the burden of demonstrating "probable cause to believe that the crime charged has been committed and that the defendant has committed it." Utah R.Crim. P. 7(i)(2). The State met this burden; thus, Rogers was properly bound over for trial.

¶ 41 Nevertheless, even if evidence of value was necessary at the preliminary hearing, the main opinion's analysis is flawed in other respects. First, at the initial hearing, even before the case was reopened, the State presented sufficient evidence of the value of the property taken through the victim's testimony. *See State v. Ballenberger,* 652 P.2d 927, 931 (Utah 1982) (" 'The owner of an article is competent to testify as to its value ....' " (quoting *State v. Harris,* 30 Utah 2d 439, 519 P.2d 247, 248 (1974))). The victim testified

that roughly $10,000 in baseball memorabilia was stolen. Furthermore, the victim testified that many of the stolen items were recovered. The recovered property included all, or most, of a collection autographed baseballs valued at $1,350. Many binders, which contained the victim's extensive collection of baseball cards, were also recovered, although some of the most valuable cards were missing. The memorabilia was recovered from a vehicle driven by one of Rogers's friends and from the friend's residence. Rogers admitted to having possession of the memorabilia, claiming to have found it by a dumpster. Thus, it is reasonable to infer from this evidence that Rogers received close to $10,000 in stolen property. This evidence was clearly sufficient to establish a "reasonable belief" that Rogers was in possession of stolen property that exceeded a value of $5,000. *State v. Clark,* 2001 UT 9,¶ 16, 20 P.3d 300.

¶ 42 Second, "[i]t is well-established that the granting of a continuance is discretionary with the trial judge. Absent a clear abuse of that discretion, the decision will not be reversed by this [c]ourt." *State v. Williams,* 712 P.2d 220, 222 (Utah 1985). Here, in an abundance of caution, the trial judge allowed a continuance so the State could present more precise evidence of valuation, which ultimately came in. Reviewing the court's decision to grant the continuance under the proper "clear abuse of discretion" standard, we should affirm.

¶ 43 Third, I do not believe *State v. Brickey,* 714 P.2d 644 (Utah 1986), has any application to this case. By its own terms, *Brickey* applies only where there is a dismissal for insufficient evidence. Nevertheless, even if the *Brickey* line of cases could be stretched to cover a continuance, any deficiency in the evidence of value at the first hearing should be considered, at most, "an innocent miscalculation of the quantum of evidence required for a bindover." *State v. Morgan,* 2001 UT 87,¶ 15, 34 P.3d 767; *see also State v. Atencio,* 2004 UT App 93,¶¶ 15,17, 89 P.3d 191.

¶ 44 For all of the foregoing reasons, I respectfully dissent.