*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAYMOND RICE,

Defendant-Appellant.

UNPUBLISHED
June 27, 2019

No. 339253
Wayne Circuit Court
LC No. 17-001795-01-FC

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant, Raymond Rice, appeals by right his jury trial convictions of assault with intent to commit murder, MCL 750.83, felon in possession of a firearm, MCL 750.227b, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.224f. The trial court sentenced him as a third-offense habitual offender, MCL 769.11, to two years' imprisonment for the felony-firearm conviction, to be served consecutively to a prison term of 9 to 10 years for the assault conviction, and time served (23 days) for the felon-in-possession conviction. We affirm.

Defendant's convictions arise from the January 12, 2017 shooting assault of Dontae Williams-McCray (McCray). The prosecution presented evidence that McCray had given defendant $150 for a car repair that defendant never performed. Defendant repaid $40, but McCray sought repayment of the $110 balance. On January 12, 2017, after speaking to defendant on the telephone, McCray and a friend, Demer Ellis, went to defendant's home to collect the balance. According to both McCray and Ellis, as McCray was on the porch steps approaching defendant's house, defendant shot McCray, who was unarmed, and defendant continued to shoot at McCray as McCray retreated to his car and drove off. McCray sustained two gunshot wounds. Defendant was charged with two counts of assault with intent to commit murder and two counts of felony-firearm for assaults against both McCray and Ellis, and one count of felon in possession of a firearm. The defense theory at trial was self-defense. The trial court directed a verdict for defendant on the assault and felony-firearm counts related to Ellis, and the jury convicted defendant of the remaining counts.

-1-

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that the trial court abused its discretion by denying his motion for a new trial premised on ineffective assistance of counsel. We disagree. "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Anderson*, 322 Mich App 622, 627-628; 912 NW2d 607 (2018). The trial court's factual findings are generally reviewed for clear error, and questions of law are reviewed de novo. *Id*. at 628. Where, as in this case, the trial court does not conduct a *Ginther*[1] hearing, review is limited to errors apparent from the record. *Id*.

To establish ineffective assistance of counsel, a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different. *Id*. at 628. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. Effective assistance is presumed, and a defendant bears the heavy burden of proving otherwise. *Id*. Defendant has the burden of establishing the factual predicate for his claim. *Id*.

Defendant first argues that defense counsel was ineffective for failing to call Shawana Henderson as a defense witness. Defendant maintains that Henderson could have supported his testimony that McCray had been threatening defendant before McCray arrived at defendant's house on January 12, 2017. Decisions regarding whether to call certain witnesses and to present specific evidence generally constitute matters of trial strategy. *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). This Court will not second-guess counsel on matters of trial strategy. The failure to call witnesses will not constitute ineffective assistance unless it deprived the defendant of a substantial defense. *Id*. "A substantial defense is one that could have made a difference in the trial's outcome." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

Defendant offered Henderson's affidavit in support of this claim. An affidavit offered in support of a motion must be premised on personal knowledge, must state with particularity facts admissible as evidence, and must show that the affiant, if sworn as a witness, could testify competently to the facts stated in the affidavit. MCR 2.119(B); MCR 1.103. Henderson's affidavit avers, in pertinent part:

6. That I overheard the Complainant Mr. McCray making threats towards Mr. Rice on the 8th of January, 2017.

7. That I was witness to five phone calls from Mr. McCray to Mr. Rice on the 8th of January, 2017. That the calls were threatening in nature.

---

[1] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

8. That this was the same date that Mr. Rice had to talk to Mr. McCray's Mother about said threats. Mr. Rice told her to have her Son come over and pick up some money that he would leave outside for him.

9. That on that same date Mr. Rice was given four days to pay Mr. McCray the $150 owed.

10. That Mr. McCray threatened bodily harm as well as property damage if Mr. Rice did not pay the money.

11. That on the same date Mr. Rice left $40 for Mr. McCray to pick up.

12. That after picking up the $40 the following day, January 9, 2017, Mr. McCray started calling Mr. Rice again, threatening him to pay the rest of the money.

13. That Mr. Rice informed me that Mr. McCray was making threatening phone calls on January 12, 2017 prior to appearing at Mr. Rice's house.

14. That I know Mr. McCray to carry a weapon.

15. That I am personally aware that trial counsel failed to meet with Mr. Rice prior to trial to go over his trial testimony with him.

16. Mr. Rice was ill prepared to give testimony at his trial because of this lack of preparation.

17. That I am also personally aware of the content of phone records and the fact that they supported Mr. Rice's timeline of events. The records were essential to his defense.

18. That Mr. Rice became scared of Mr. McCray's threatening behavior on January 12, 2017.[2]

In ¶¶ 6-12 of her affidavit, Henderson avers that she "overheard" McCray making threats to defendant and was "witness" to five calls that were threatening in nature. The affidavit does not indicate the manner in which Henderson purportedly overheard or witnessed the phone calls, nor does it specify the nature of any threats that she heard. Regardless, testimony from multiple witnesses at trial, including McCray and his mother, established that McCray's quest to obtain the return of his deposit involved a series of telephone calls between McCray and defendant, including some that became heated. Because the information that Henderson would have

---

[2] Neither Henderson's affidavit nor defendant's affidavit that was attached to his brief on appeal avers that defense counsel was ever made aware of Henderson's existence as a potential defense witness.

provided was presented to the jury through other witnesses, defense counsel's failure to call Henderson for this purpose did not deprive defendant of a substantial defense.

With regard to the allegations in Henderson's affidavit addressing the date of the assault, the affidavit does not establish that Henderson had personal knowledge of any events on that date, or that she could testify competently to those facts. In ¶ 13 of her affidavit, Henderson stated that defendant "informed" her that McCray was making threatening phone calls on January 12, 2017. This allegation indicates that Henderson did not have personal knowledge of any threats by McCray on that date. She only knew what defendant told her. Knowledge that an affiant acquired from another person is hearsay, MRE 801(c), and does not satisfy the requirement of personal knowledge. *Gardiner v Wayne Circuit Judge*, 155 Mich 414, 415; 119 NW 432 (1909). Hearsay is generally inadmissible, MRE 802, and defendant does not identify any hearsay exception for admitting his statements to Henderson.

In ¶¶ 14-18 of her affidavit, Henderson states that she knew McCray carried a weapon, was "personally aware" that defense counsel did not meet with defendant, and was "personally aware" of the content of defendant's telephone records. However, her affidavit does not state with particularity any facts showing how she had knowledge of these matters. Similarly, the affidavit does not provide any basis for concluding that Henderson had personal knowledge that defendant "was ill prepared to give testimony at trial" or that defendant was scared of McCray's threatening behavior on January 12, 2017. In any event, other evidence was introduced at trial that McCray had a concealed pistol license and regularly carried a gun, that there were a series of telephone calls between McCray and defendant on the day of and preceding the offense, and that defendant felt scared because of McCray's threatening conduct on January 12, 2017. Therefore, defense counsel's failure to call Henderson for these purposes did not deprive defendant of a substantial defense. In addition, Henderson's claims that trial counsel did not meet with defendant and that defendant was not prepared to testify were not relevant to defendant's factual guilt or innocence. Accordingly, defendant has not demonstrated that trial counsel was ineffective for failing to present Henderson's testimony at trial.

Next, defendant argues that trial counsel was ineffective for failing to obtain the recording of a 911 call that his neighbor, Rodriequez Bartrellai, purportedly made on the date of the shooting. The record discloses that Bartrellai was initially misidentified as another witness, Ron Pratt, whom defense counsel advised the court he had not been able to contact. Shortly before trial, the parties learned of Bartrellai's identity and interviewed him for the first time. At trial, Bartrellai testified that he witnessed an argument between McCray and defendant on the date of the offense and called 911. Although defendant now faults defense counsel for not introducing Bartrellai's recorded 911 call at trial, no evidence of an actual 911 recording has been presented, and defendant has not presented any evidence that counsel should have been aware of Bartrellai's 911 call earlier and could have obtained a recording of the call after learning about Bartrellai's identity. Absent such a showing, there is no basis for concluding that defense counsel's failure to obtain and introduce the 911 recording was objectively unreasonable.

Moreover, given the testimony regarding the 911 call at trial, there is no reasonable probability that the result of defendant's trial would have been different if counsel had been able to produce the 911 call at trial. Bartrellai testified at trial regarding his observations of a

-4-

confrontation between McCray and defendant shortly before the shooting. Bartrellai also testified regarding the context and content of his purported 911 call. He admitted that he was down the block at the time of the argument between McCray and defendant, and although he heard McCray yelling as McCray stood on the floorboard of his vehicle, he said he did not report that information to the 911 operator. Instead, he advised the operator that he heard shots fired, but he said he was inside his home at the time of the shooting because he had to enter it to get his cell phone. Given this testimony, there is no reasonable basis for concluding that the 911 call would have added anything of significance. Therefore, defendant has not demonstrated that he was prejudiced by counsel's failure to obtain the recording.

Defendant next argues that defense counsel was ineffective for not obtaining and introducing defendant's telephone records, which defendant maintains would have supported his testimony that McCray threatened him on January 8, 2017, and started calling him again on January 12, 2017. Preliminarily, we note that the records that defendant has submitted in support of this claim are not official documents from defendant's phone carrier, but only a list of calls from the phone provided by defendant. There is no accompanying affidavit to verify what the document purports to represent, or to establish that the call records are authentic, accurate, and admissible under the rules of evidence. See MRE 803(6); *People v Vargo*, 139 Mich App 573, 580; 362 NW2d 840 (1984). Regardless, the records would have only shown that several calls were exchanged between McCray and defendant in the days leading up to and on the date of the offense. Contrary to what defendant asserts, the records do not reveal the nature or content of the calls that were made. Moreover, defense counsel established the call history between McCray and defendant in his cross-examination of McCray at trial. Counsel elicited that McCray called defendant seven times on January 8, 2017, the day McCray picked up the $40, and elicited that the two men spoke again at least four times on January 12, 2017, including one call that became heated, before McCray went to defendant's house. Because defense counsel established the existence of these telephone contacts through McCray's testimony, defendant was not prejudiced by counsel's failure to introduce the telephone records.

Defendant also argues that defense counsel was ineffective for failing to introduce evidence that defendant's firearm was an automatic weapon that was capable of firing several gunshots if the trigger was pulled just once. Contrary to what defendant argues, counsel introduced this evidence through defendant's testimony. On direct examination by defense counsel, defendant testified that he squeezed the trigger "[j]ust once and it kept going" because it was "an automatic." To the extent that defendant complains that counsel failed to introduce additional evidence regarding the capabilities of defendant's gun, the gun was never produced to ascertain its capabilities and defendant has not offered any other evidence to support his claim that the gun was actually an automatic weapon. By not presenting such evidence, defendant has failed to establish the factual predicate for this claim. *Anderson*, 322 Mich App at 628.

Finally, defendant argues that trial counsel was ineffective for failing to object to the trial court's jury instructions on the basis that the self-defense instruction was not given for the weapon offenses. The record does not support this argument. Although the self-defense instruction was given after the assault instructions, the trial court did not restrict its application to the assault offenses. Rather, the court instructed the jury:

Now I'm also going to instruct you on the use of deadly force in self-defense, even though this deadly force didn't result in a death.

You need to know that the defendant claims, of course, that he acted in lawful self-defense. A person has a right to use force or even take a life to defend himself against, or under certain circumstances if a person acts in lawful self-defense, that person's actions are justified and *he is not guilty of any crime*. [Emphasis added.]

Jury instructions are examined as a whole instead of piecemeal, and imperfect instructions do not constitute grounds for setting aside a conviction if the instructions fairly presented the issues to be tried and protected the defendant's rights. *People v Henderson*, 306 Mich App 1, 4; 854 NW2d 234 (2014). Because the trial court's instructions adequately informed the jury that defendant would not be guilty "of any crime" if the jury found that he acted in lawful self-defense, defense counsel's failure to object was not objectively unreasonable. In any event, because the jury convicted defendant of assault with intent to commit murder, it is apparent that the jury rejected defendant's claim of self-defense. Accordingly, there is no reasonable probability that the result of defendant's trial would have been different if counsel had requested that the court more clearly explain that the self-defense claim also applied to the weapon charges. Accordingly, defendant was not prejudiced by counsel's failure to object.

## II. SUFFICIENCY AND GREAT WEIGHT OF THE EVIDENCE

Next, defendant argues that the evidence was insufficient to support his convictions and that the jury's verdict is contrary to the great weight of the evidence.[3] We disagree. A properly preserved great-weight-of-the-evidence issue is reviewed to determine whether the evidences preponderates so heavily against the verdict that it constitutes a miscarriage of justice to allow the verdict to stand. *People v Cameron*, 291 Mich App 599, 616; 806 NW2d 371 (2011). When assessing a sufficiency-of-the-evidence argument, an appellate court will view the evidence in a light most favorable to the prosecution to determine if it would support a rational jury's finding that the elements had been proven beyond a reasonable doubt. *Id.* at 613. In applying this standard, a court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id.* (citation omitted).

The elements of assault with intent to commit murder are an assault coupled with the intent to kill, which, if successful would render the killing murder. *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010). An assault occurs when there is an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving

---

[3] We note that defendant's statement of questions presented is confined to a challenge to the great weight of the evidence, and that defendant expands the scope of this issue in the body of his brief by also challenging the legal sufficiency of the evidence in support of his convictions. Because defendant did not raise a challenge to the sufficiency of the evidence in his statement of questions presented, we could decline to consider that issue. *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000).

an immediate battery. *People v Nickens*, 470 Mich 622, 628; 685 NW2d 657 (2004). A battery is an intentional, unconsented, and harmful or offensive touching of another person. *Id*. A jury may infer an intent to kill from all the facts and circumstances, including the use of a dangerous weapon. *Henderson*, 306 Mich App at 11. To convict a defendant of felony-firearm, the prosecutor must prove that defendant possessed a firearm during the commission of, or the attempt to commit, a felony. *People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011). Two essential elements are required to establish felon-in-possession, the defendant is a felon who possessed a firearm before his right to do so was formally restored in accordance with statutory requirements. *People v Bass*, 317 Mich App 241, 267-268; 893 NW2d 140 (2016).

In this case, defendant raised a claim of self-defense. A defendant who asserts self-defense has the burden of initially producing some evidence from which a jury could conclude that the elements necessary to support the defense exist. *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010). If the defendant meets this burden, the prosecution must exclude the possibility of self-defense beyond a reasonable doubt. *People v Stevens*, 306 Mich App 620, 630; 858 NW2d 98 (2014). Pursuant to the Self-Defense Act, MCL 780.971 *et seq*., an individual who is not engaged in the commission of a crime may use deadly force anywhere he has the legal right to be without a duty to retreat, if he honestly and reasonably believes that the use of deadly force is necessary to prevent imminent death, great bodily harm, or sexual assault. MCL 780.972(1); *People v Guajardo*, 300 Mich App 26, 35-36; 832 NW2d 409 (2013). The credibility of the defendant's testimony presents an issue for the jury, and the jury is free to disbelieve the testimony, particularly in light of the circumstances. *Stevens*, 306 Mich App at 630-631.

Initially, we reject defendant's argument that the evidence was insufficient to support his convictions. The testimony of McCray and Ellis both indicated that defendant shot McCray after McCray went to defendant's house to collect the remaining balance of a debt that defendant owed to McCray. According to McCray, as he began walking up the porch steps, defendant shot him, and then continued to shoot at him as he retreated to his car and drove off. He was shot in the chest area and arm. Ellis similarly testified that defendant shot McCray while McCray was walking up the porch steps. Ellis heard five gunshots. Ellis testified that McCray was on the porch steps when the first shot was fired, was running back to the car when the second shot was fired, and was in the car when the last three shots were fired. The parties stipulated that defendant had previously been convicted of a felony, and his right to possess a firearm had not been restored. This evidence, viewed in a light most favorable to the prosecution, was sufficient to enable the jury to find beyond a reasonable doubt that defendant unlawfully possessed a firearm, which he used to assault McCray with the intent to kill him.

The evidence was also sufficient to enable the jury to find beyond a reasonable doubt that defendant did not act in self-defense. McCray testified that his family had known defendant for more than 20 years. McCray testified that he went to defendant's house on the day of the offense because defendant invited him there. McCray's mother similarly testified that she spoke to defendant on the day of the offense and defendant told her it was okay for McCray to come over and collect his money. McCray and Ellis both testified that McCray was not armed when they went to defendant's house. McCray denied that any yelling occurred between he and defendant when he arrived at defendant's house, and Ellis similarly testified that he did not hear any conversation between McCray and defendant before defendant shot McCray. Viewed in a light

most favorable to the prosecution, this evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant did not have an honest and reasonable belief that the use of deadly force was necessary to prevent imminent death or great bodily harm when McCray arrived at defendant's home to collect his money.

We also reject defendant's argument that the jury's verdict is against the great weight of the evidence. It was undisputed that defendant shot McCray with a firearm. The focus of defendant's great-weight challenge is on whether the great weight of the evidence supported his claim of self-defense. Defendant claimed that he shot McCray because McCray had repeatedly threatened him and McCray continued to act in a threatening manner when he arrived at defendant's house, uninvited and unexpected. Defendant also presented a defense witness who testified that he overheard McCray and defendant arguing just before the shooting. This testimony was diametrically opposed by the version of events offered by McCray and Ellis, who both denied that there was any yelling before defendant shot McCray. Moreover, McCray testified that he had spoken to defendant shortly before the shooting and defendant invited McCray to defendant's house so McCray could collect the money that defendant owed him. The credibility of this competing testimony was for the jury to decide. The jury could have found that defendant's claim that he did not invite McCray to his house and was not expecting him was belied by the fact that defendant was seated on his porch with a weapon when McCray arrived at his home. The jury could have also found that defendant's claim of self-defense was suspect because his conduct was inconsistent with someone who was in fear of his life or great bodily harm because of ongoing threats. Specifically, defendant made no effort to seek shelter inside his house when McCray arrived, and defendant never reported McCray's allegedly threatening conduct to the police. In addition, after the shooting, defendant gathered evidence and fled the area, which the jury could find was inconsistent with someone who had acted in lawful self-defense. In sum, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a new trial on this issue.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause