# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CURRY DALE BRYSON,

Defendant-Appellant.

UNPUBLISHED
January 16, 2018

No. 333068
Wayne Circuit Court
LC No. 15-009938-01-FH

Before: TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant was convicted by a jury of involuntary manslaughter[1] and possession of a firearm during the commission of a felony (felony-firearm).[2] He appeals as of right. We affirm.

Defendant's convictions arose from the shooting death of three-year-old Elijah Walker at defendant's home by defendant's 11-year-old son, CL, with a gun that defendant kept in his closet. Defendant was at work at the time and Elijah's mother, Denisha Walker, was supervising her own three young children and defendant's two children. On appeal, defendant contends that the evidence was insufficient to convict him, that his trial counsel was ineffective by failing to present his defense, and that his due process rights were violated when he had two preliminary examinations in front of different judges. This Court reviews de novo a challenge to the sufficiency of the evidence.[3] Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record.[4] The constitutional question of whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment right to counsel is reviewed de novo.[5]

---

[1] MCL 750.321.

[2] MCL 750.227b.

[3] *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

[4] *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

[5] *Id*. at 242.

-1-

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was not sufficient to convict him. Due process requires that evidence of every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction.[6] To determine if the prosecution produced evidence sufficient to support a conviction, this Court considers "the evidence in the light most favorable to the prosecutor" to ascertain " 'whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' "[7] Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction.[8]

In order to demonstrate that defendant was guilty of gross negligence amounting to involuntary manslaughter, the prosecution had to prove beyond a reasonable doubt:

> (1) defendant's knowledge of a situation requiring the use of ordinary care and diligence to avert injury to another, (2) [his] ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) [his] failure to use care and diligence to avert the threatened danger when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another.[9]

Defendant disputes that the third element, causation, was satisfied because his actions were not the factual or proximate cause of Elijah's death. The causation element of criminal negligence amounting to involuntary manslaughter consists of two components: cause-in-fact and proximate cause.[10]

Factual causation is a determination regarding whether a defendant's conduct was a "factual cause of the result," by assessing whether the result would have occurred "but for" the defendant's actions.[11] In other words, "[i]f the result would not have occurred absent the defendant's conduct, then factual causation exists."[12] Here, the parties stipulated that 11-year-old CL used defendant's .45-caliber gun to shoot Elijah, causing his death. Defendant made a

---

[6] *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979).

[7] *People v Tennyson*, 487 Mich 730, 735; 790 NW2d 354 (2010), quoting *People v Hardiman*, 466 Mich 417, 421; 646 NW2d 158 (2002).

[8] *Hardiman*, 466 Mich at 429.

[9] *People v Albers*, 258 Mich App 578, 582; 672 NW2d 336 (2003).

[10] *People v Tims*, 449 Mich 83, 94-95; 534 NW2d 675 (1995) (referring to common law in the absence of statutory guidance regarding the requisite causation).

[11] *People v Schaefer*, 473 Mich 418, 435-436; 703 NW2d 774 (2005), mod in part on other grounds by *People v Derror*, 475 Mich 316, 320 (2006), overruled in part by *People v Feezel*, 486 Mich 184, 188 (2010).

[12] *Schaefer*, 473 Mich at 436.

statement to Detective Patrick Lane that he kept guns in the closet in his bedroom, and crime scene technician Nathan Johnson observed two weapons in defendant's closet in the hours after the shooting. The .45-caliber firearm was on the top shelf of the closet, 81 inches off the ground, and an assault rifle was in the corner. Furthermore, defendant knew that CL had been caught near his mother's house shooting a different gun mere days before he shot Elijah. Defendant also knew that CL had found, and was playing with, his .45-caliber gun two years earlier. Thus, "but for" defendant keeping a loaded firearm in his closet—while knowing that CL was aware of the gun, had access to it, and had been involved in obtaining and shooting guns on his own, including the one used to shoot Elijah—Elijah would not have been killed. Defendant's actions were a factual cause of Elijah's death.

The prosecution must also establish that defendant's actions were the proximate cause of Elijah's death so that defendant is not convicted based on conduct that is "too remote or unnatural."[13] For defendant's actions to be a proximate cause, "the victim's injury must be a direct and natural result of the defendant's actions."[14] Defendant argues that he used ordinary care to ensure that CL could not acquire the gun by arranging for Walker to supervise CL, coming home from work to confirm that CL was supervised, and checking to see that the bedroom door was locked.

Walker testified that she was at defendant's home when defendant called her from work to ask her to watch his children, SB and CL, who their mother would soon drop off at defendant's home. Walker said that, after defendant's children arrived, she went to the store with her children, her sister, and SB, while CL remained at defendant's house with an adult resident of the home, Donald. Defendant told Detective Lane that SB called him and Walker was not present, so defendant called repeatedly to ensure that CL was monitored. Walker reported that defendant was home when her group returned from the store and she did not see Donald before defendant returned to work. Defendant told Detective Lane that he checked to make sure the bedroom door was locked when he was home around 11:00 a.m. Walker reported that she, too, checked the door to defendant's room after he returned to work and found it locked. Despite some effort by defendant to monitor CL, there was sufficient evidence for the jury to find beyond a reasonable doubt that defendant failed to use care and diligence to prevent CL from obtaining and using his loaded firearm, causing the death of Elijah.

As stated, defendant was aware that CL had a history of unsupervised involvement with guns, including possessing and shooting one without permission in the days before he shot Elijah. Defendant also knew that he had to safeguard his firearms from CL because CL had found the .45-caliber weapon a couple years before the shooting and was playing with the gun, causing defendant to decide to keep his bedroom door locked. Defendant explicitly told Detective Lane that he was concerned about CL on the date of the shooting, because CL had recently obtained a gun and would often snoop around the home. However, defendant could not have ensured that his bedroom door was locked before he went to work that morning because

---

[13] *Id.*

[14] *Id.* (quotation marks and citation omitted).

Walker reported that she slept in defendant's bedroom the night before and she shut, but could not lock, the door when she left the room after defendant had gone to work. Walker reported that defendant's closet door did not have a door knob, and there was no evidence that the closet door had a lock, that the bedroom windows locked, or that the guns were stored in a locked case or equipped with trigger locks. Thus, defendant's failure to secure or disarm the gun while CL was at the house, particularly in light of CL's apparent fascination with firearms, including the one that was used to shoot Elijah, was sufficient for the jury to find beyond a reasonable doubt that Elijah's death was "a direct and natural result" of defendant's actions.

Defendant argues that Walker's and Donald's failure to supervise CL closely enough to prevent him from accessing the gun was an intervening and superseding factor, negating defendant's actions as a proximate cause of Elijah's death. Where an intervening cause supersedes a defendant's actions "as a legally significant causal factor, then the defendant's conduct will not be deemed a proximate cause of the victim's injury."[15] Whether an intervening cause supersedes and severs the causal link is a question of reasonable foreseeability.[16] The Court in *Schaefer* discussed the analysis, as such:

> The linchpin in the superseding cause analysis, therefore, is whether the intervening cause was foreseeable based on an objective standard of reasonableness. If it was reasonably foreseeable, then the defendant's conduct will be considered a proximate cause. If, however, the intervening act by the victim or a third party was not reasonably foreseeable—e.g., *gross* negligence or intentional misconduct—then generally the causal link is severed and the defendant's conduct is not regarded as a proximate cause of the victim's injury or death.[17]

Undoubtedly, as Walker admitted, she lost sight of CL while she was supervising him. However, the fact that the adults who were supervising CL in defendant's absence were unable to prevent CL from obtaining the firearm was reasonably foreseeable. Most notably, neither adult was aware that there was a gun in the home. Further, Walker was asked to supervise defendant's two children while she already had her own three young children with her, and Donald reported that he left for the day shortly after defendant's children arrived, leaving them in Walker's care. It was not clear from the evidence whether CL obtained the gun by entering defendant's room before he returned to lock it, by entering through an unlocked window, or by some other method. However, it was reasonably foreseeable that Walker and Donald could not keep CL away from a gun that they did not know about, particularly when there were four younger children to supervise. Likewise, their failure to fulfill a responsibility of which they were not aware cannot be considered grossly negligent or characterized as intentional misconduct.

---

[15] *Id*. at 437.

[16] *Id*.

[17] *Id*. at 437-438.

In sum, when viewed in the light most favorable to the prosecution, the evidence was sufficient to find beyond a reasonable doubt that defendant's actions were the cause of Elijah's death and to convict defendant of involuntary manslaughter.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that his trial counsel provided ineffective assistance by failing to show the jury a portion of surveillance video and not requesting an instruction regarding proximate cause. A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions.[18] This "right to counsel encompasses the right to the 'effective' assistance of counsel."[19] In order to demonstrate an ineffective assistance of counsel claim, a defendant must show "that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense."[20] A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness."[21] "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise."[22] Defendant must also show that the resultant proceedings were fundamentally unfair or unreliable.[23]

Defendant argues that the performance of his trial counsel was deficient because he failed to display evidence or request jury instructions that supported his theory of defense, i.e., that his negligence did not cause Elijah's death. The United States Constitution provides criminal defendants with the right "to present a complete defense."[24] "Few rights are more fundamental than that of an accused to present evidence in his or her own defense."[25] Criminal defendants have the right to submit evidence that could influence the jury's determination of guilt.[26]

Defendant contends that his trial counsel should have presented the home's surveillance video of CL. Defendant asserts that "he watched the videotape of the surveillance cameras and he saw footage of [CL] going toward the back of the house and it was clear that he went in the window and retrieved the gun in the morning while Ms. Walker was at the store with the other children." Defendant submitted an affidavit similarly stating that the surveillance video showed

---

[18] US Const, Am VI; Const 1963 art 1, § 20.

[19] *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

[20] *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (citation omitted).

[21] *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

[22] *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2002).

[23] *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007).

[24] *People v King*, 297 Mich App 465, 473; 824 NW2d 258 (2012) (quotation marks and citation omitted).

[25] *Unger*, 278 Mich App at 249.

[26] *People v Anstey*, 476 Mich 436, 460; 719 NW2d 579 (2006).

-5-

CL walking unsupervised to the back of the house and then into the vehicle where Elijah was shot.

However, defendant's assertion concerning the video was contradicted at trial. Johnson testified that there were four security cameras on the home with the monitors in defendant's bedroom, and that the backyard cameras showed an alley, garage, and a portion of the car where Elijah was shot. Police Sergeant Steven Ford extracted video from the surveillance system for the period between 12:30 and 1:19 p.m. on August 3, 2015, some of which was played for the jury, and Ford reported that none of the cameras pointed at the window to defendant's bedroom. Thus, apart from defendant's unsubstantiated assertion, there is no reason to believe that additional surveillance footage would showed CL entering the house through defendant's bedroom window, and the performance of defendant's trial counsel could not be deficient for not presenting evidence that was unavailable.

Most significantly, defendant's theory that the failure of the other adults to adequately supervise CL allowed CL to obtain and use the gun was presented to the jury. As stated, Walker testified that she could not lock the bedroom door after she left the room in the morning, that she left CL at the home with Donald while she took all the other children to the store, and that she lost sight of CL after returning to the home. Defendant's trial counsel argued in closing that defendant took ordinary care to ensure that adults were supervising CL, including coming home to make sure CL was supervised and the bedroom door was locked. Counsel also emphasized that defendant locked the gun in his bedroom and that it was unknown how CL acquired it. Thus, defendant's closing argument squarely placed the responsibility for supervising CL during the time he was thought to obtain the gun on the adults defendant trusted to supervise his children, and the performance of defendant's trial counsel regarding the presentation of surveillance video did not deprive defendant of presenting this defense.

Counsel's performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different."[27] The parties stipulated that CL used defendant's gun from his closet to shoot Elijah. Defendant argued in closing that the evidence did not demonstrate how CL accessed the closet, just that defendant had locked the door and other adults were supervising CL. However, while acknowledging that it was unknown how CL obtained the gun because he was sneaking, the prosecution maintained that the manner in which CL retrieved the gun was irrelevant because defendant's gross negligence was in failing to adequately secure the gun from CL. Thus, evidence suggesting that CL may have obtained the gun by sneaking through a window would not have exonerated defendant because the jury knew of that possibility and was asked to decide the case based on defendant's level of negligence in failing to properly secure the gun.

Defendant also argues that the performance of his trial counsel was deficient in failing to request a jury instruction regarding proximate cause and intervening and superseding events. A

---

[27] *Jordan*, 275 Mich App at 667.

defendant has the right to "a properly instructed jury."[28] "[T]he trial court is required to instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner."[29] "[J]ury instructions must include all the elements of the charged offenses" and cannot exclude "material issues, defenses, and theories" where there is supporting evidence.[30]

The trial court instructed the jury:

There maybe [sic] more than one cause of death. It is not enough that defendant's act made it possible for the death though [sic] to occur. In order to find the defendant caused the death of [the] victim you must find that the death was a natural or necessary result of defendant's act, that is, you must find beyond a reasonable doubt that the harm which resulted from defendant's conduct was to an ordinary person a reasonably foreseeable consequence of the conduct.

As stated, for defendant's actions to be a proximate cause, "the victim's injury must be a direct and natural result of the defendant's actions,"[31] and the trial court instructed the jury accordingly. Further, by instructing the jury that the resulting harm must have been a reasonably foreseeable consequence of defendant's conduct, the trial court effectively conveyed to the jury the legal significance of intervening and superseding causes because whether an intervening cause supersedes and severs the causal link is a question of reasonable foreseeability.[32] Although the trial court did not specifically use the terms "intervening cause" or "superseding cause," there is no error where the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights."[33] Counsel was not ineffective for failing to make a futile objection to the jury instructions.[34]

## III. PRELIMINARY EXAMINATION

Lastly, defendant argues that his due process rights were violated when he had a second preliminary examination in front of a different judge. Unpreserved claims are reviewed for plain error affecting substantial rights.[35] Reversal is warranted only if the plain error resulted in the

---

[28] *People v Mills*, 450 Mich 61, 80-81; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995).

[29] *Mills*, 450 Mich at 80-81.

[30] *People v McKinney*, 258 Mich App 157, 162-163; 670 NW2d 254 (2003).

[31] *Schaefer*, 473 Mich at 436 (quotation marks and citation omitted).

[32] *Id*. at 437.

[33] *People v McFall*, 224 Mich App 403, 412-413; 569 NW2d 828 (1997) (quotation marks and citation omitted).

[34] *Rodgers*, 248 Mich App at 715 (noting that counsel need not make futile objections).

[35] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

conviction of an innocent defendant or if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence."[36] At defendant's first preliminary examination on September 8, 2015, District Court Judge Ronald Giles dismissed the charges against defendant because there was no evidence that demonstrated what gun had been used by CL. A second preliminary examination was later held before District Court Judge Lydia Nance-Adams. Judge Nance-Adams incorporated the record from the first preliminary examination and heard additional evidence in the form of a ballistics report before binding defendant over to circuit court for trial.

With regard to preliminary hearings, MCR 6.110(F) provides:

> If, after considering the evidence, the court determines that probable cause does not exist to believe either that an offense has been committed or that the defendant committed it, the court must discharge the defendant without prejudice to the prosecutor initiating a subsequent prosecution for the same offense or reduce the charge to an offense that is not a felony. Except as provided in MCR 8.111(C), the subsequent preliminary examination must be held before the same judicial officer and the prosecutor must present additional evidence to support the charge.

MCR 8.111(C)(1) provides that the chief judge may reassign a case if a judge is disqualified or for other good cause cannot undertake an assigned case. Thus, because there was no reason of record that Judge Giles was unable to preside over the second preliminary examination, the district court erred in not holding the "subsequent preliminary examination . . . before the same judicial officer."[37]

However, we do not agree that defendant's due process rights were violated as a result of the error. "[S]ubjecting a defendant to repeated preliminary examinations violates due process if the prosecutor attempts to harass the defendant or engage in 'judge-shopping.' "[38] "Among the factors to be considered in determining whether a due process violation has occurred are the reinstitution of charges without additional, noncumulative evidence not introduced at the first preliminary examination, the reinstitution of charges to harass and judge shopping to obtain a favorable ruling."[39]

Here, the later availability of the ballistics report necessitated the subsequent preliminary examination, indicating that the prosecution's motive was not to harass defendant. Additionally, there is no evidence from which we can conclude that the prosecution had any control or

---

[36] *Id*. at 763 (quotation marks and citation omitted) (alteration in original).

[37] MCR 6.110(F).

[38] *People v Robbins,* 223 Mich App 355, 363; 566 NW2d 49 (1997).

[39] *People v Dunbar*, 463 Mich 606, 619; 625 NW2d 1 (2001) (KELLY, J., dissenting), overruled in part on other grounds by *People v Jackson*, 483 Mich 271 (2009), quoting *People v Vargo*, 139 Mich App 573, 578; 362 NW2d 840 (1984).

influence on the assignment of the case to a different judge. Both parties agreed with the procedure set forth by Judge Nance-Adams, as did defendant himself. Further, defendant never requested a transfer of the case or objected to the second judge, and the prosecution never argued for having the case remain before the second judge. These facts suggest that the assignment of defendant's second preliminary examination to Judge Nance-Adams was a procedural error or oversight and not motivated by improper "judge-shopping." Finally, for constitutional purposes, the dismissal of a case by a court following a preliminary examination does not bar a subsequent arrest, examination, and trial for the same offense because the defendant had not been placed in jeopardy.[40]

In any event, the error does not require reversal because defendant cannot demonstrate that it affected the outcome of his trial. Defendant does not argue that the evidence of the second preliminary examination should not have provided probable cause to bind him over. Further, defendant was convicted beyond a reasonable doubt of two of the three counts for which he was bound over.[41] Thus, the jury, in effect, endorsed the decision of the district court by finding that the prosecution's evidence met a higher standard of proof than that required to bind defendant over. As noted in *People v Hall*,[42] MCL 769.26 provides that any error of procedure is not error requiring reversal if the error was harmless.[43] An error does not result in a miscarriage of justice where it had no impact on the outcome of the trial.[44]

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[40] *Robbins*, 223 Mich App at 362.

[41] The jury acquitted defendant of second-degree child abuse, MCL 750.136b(3).

[42] *People v Hall*, 435 Mich 599, 603-604; 460 NW2d 520 (1990).

[43] "No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or *for error as to any matter of pleading or procedure*, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26 (emphasis added).

[44] *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).